UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., *Plaintiff*, <br><br> v. <br><br> GULF OIL LIMITED PARTNERSHIP, *Defendant*. | 3:21-CV-00932 (SVN) <br><br><br><br><br> June 23, 2023 |

### RULING AND ORDER ON PLAINTIFF'S MOTION TO AMEND

Sarala V. Nagala, United States District Judge.

In this environmental suit, Plaintiff Conservation Law Foundation, Inc. alleges that Defendant Gulf Oil Limited Partnership is violating federal law by failing to prepare its bulk petroleum storage facility in New Haven, Connecticut for severe flooding and other weather-related risks that are increasing in severity due to climate change. Plaintiff's complaint originally consisted of eighteen counts: Counts One through Fifteen alleged various violations of the Clean Water Act (the "CWA"), 33 U.S.C. § 1251 *et seq.*; and Counts Sixteen through Eighteen alleged violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* In September of 2022, the Court dismissed without prejudice Counts One through Nine and Sixteen through Eighteen of Plaintiff's complaint for lack of standing. Accordingly, the operative complaint currently consists only of Plaintiff's CWA claims in Counts Ten through Fifteen.

Presently before the Court is Plaintiff's motion for leave to amend its complaint to attempt to remedy the deficiencies described in the Court's dismissal ruling and reassert the claims the Court dismissed. Plaintiff also seeks to assert a new claim alleging that Defendant is violating the CWA by presently discharging pollutants from its New Haven facility into nearby waters.

For the reasons below, the Court finds that, although it is a close question, Plaintiff has alleged sufficient facts regarding standing to reassert Counts One through Nine and Sixteen through Eighteen of its original complaint. The Court also holds that Plaintiff is not permitted to assert its new CWA claim at this stage of the litigation. Plaintiff's request to amend is thus GRANTED IN PART and DENIED IN PART.

I.     RELEVANT FACTUAL BACKGROUND

Plaintiff filed its initial complaint in July of 2021. Compl., ECF No. 1. The Court assumes the parties' familiarity with the facts alleged in that complaint, which the Court described in its September 2022 dismissal ruling, ECF No. 96.[1] Accordingly, the Court summarizes the facts only briefly here.

The parties' dispute centers on a bulk petroleum storage terminal Defendant owns and operates in New Haven, Connecticut (the "Terminal"). Compl. ¶¶ 20, 58–59, 62. Oil products are stored at the Terminal in sixteen large aboveground storage tanks ("ASTs") surrounded by berms. *Id.* ¶¶ 64, 66–67, 73. The Terminal also has drainage systems in place for purposes of stormwater management, and to prevent contaminants from being discharged into New Haven Harbor. *Id.* ¶¶ 82–91. Stormwater from the "tank farm" at the Terminal either infiltrates the ground or is directed to a catch basin in a low elevation area. *Id.* ¶ 81.

Defendant's operation of the Terminal is regulated under RCRA because the Terminal generates hazardous waste. *Id.* ¶ 95. Operation of the Terminal is also subject to Connecticut's General Permit for Discharges Associated with Industrial Activity (the "General Permit"), which is issued by the Connecticut Department of Energy and Environmental Protection ("CT DEEP") pursuant to the CWA. *Id.* ¶¶ 80, 124. The General Permit provides several requirements and

---

[1] *See Conservation L. Found., Inc. v. Gulf Oil Ltd. P'ship*, No. 3:21-CV-00932 (SVN), 2022 WL 4585549 (D. Conn. Sept. 29, 2022).

restrictions regarding stormwater discharges, *id.* ¶ 127, including that Defendant must develop a Stormwater Pollution Prevention Plan ("SWPPP") with respect to the Terminal, *id.* ¶ 150.  Among other things, the SWPPP must identify potential pollutant sources and describe the control measures implemented at the Terminal to minimize the discharge of pollutants.  *Id.* ¶¶ 142, 151.

Plaintiff is a nonprofit organization that seeks to promote the conservation and protection of New England's public health, environment, and natural resources.  *Id.* ¶ 8.  Some of Plaintiff's members live near and regularly visit, use, and enjoy the area and waters near the Terminal, which include New Haven Harbor, the Quinnipiac River, and the Mill River.  *Id.* ¶¶ 9, 11, 27, 101–23.  Plaintiff has alleged that climate change is impacting New Haven in various ways, including by increasing the average surface temperature of nearby waters, and by causing sea level rise and frequent flooding.  *Id.* ¶¶ 21–23; *see generally id.* ¶¶ 158–255.  Plaintiff further alleges that the Terminal has not been designed, maintained, modified, or operated to account for the effects of climate change or to address the risk of pollutant discharges.  *Id.* ¶¶ 13, 25, 310–13.  Accordingly, Plaintiff asserts that the Terminal is likely to discharge pollutants into surrounding surface waters, groundwater, the community, and the air, which puts Plaintiff's members at risk.  *Id.* ¶¶ 13, 25.

## II.   PROCEDURAL HISTORY

Plaintiff initially asserted eighteen counts, seeking declaratory and injunctive relief, civil penalties, and other remedies, *id.* at 86–87.  Plaintiff's first fifteen counts generally alleged that Defendant has failed to comply with the General Permit, and thereby violated the CWA, by omitting certain information from the SWPPP and by failing to properly update the SWPPP.  *See, e.g., id.* ¶¶ 67, 211, 369.  Specifically, Plaintiff alleged the following violations of the CWA:  (1) failure to eliminate non-stormwater discharges; (2) activity inconsistent with the Connecticut Coastal Management Act (the "CMA") and causing adverse impacts to coastal resources; (3)

3

unlawful certification of an SWPPP; (4) failure to identify potential pollution sources; (5) failure to describe and implement practices to reduce pollutants and ensure permit compliance; (6) failure to implement measures to manage runoff; (7) failure to minimize the potential for leaks and spills; (8) failure to submit required facts or information to CT DEEP; (9) failure to amend or update an SWPPP; (10) failure to identify discharges to impaired waters in an SWPPP; (11) failure to conduct monitoring for discharges to impaired waters; (12) failure to identify outfalls in an SWPPP; (13) failure to monitor discharges from all outfalls; (14) illegal infiltration of stormwater; and (15) failure to maintain an impervious containment area.  Plaintiff also claimed that Defendant is violating RCRA by failing to mitigate the risks of hazardous waste discharges associated with climate change.  *See id.* ¶¶ 422, 442, 457.  Specifically, Plaintiff alleged the following violations of RCRA:  (1) open dumping; (2) imminent and substantial endangerment to human health and the environment; and (3) failure to comply with state and federal RCRA regulations applicable to generators of hazardous wastes.

      In October of 2021, Defendant moved to dismiss the first nine CWA counts, as well as all three RCRA counts, for lack of standing and failure to state a claim.  ECF No. 33.[2]  The Court agreed with Defendant's standing arguments and dismissed Counts One through Nine and Sixteen through Eighteen of Plaintiff's complaint without prejudice.  ECF No. 96.  The Court explained that, because Plaintiff had relied on allegations regarding the longer-term impacts of climate change but had not alleged how such impacts present a real and immediate threat of harm to Plaintiff's members, Plaintiff had failed to establish Article III standing as to the claims at issue.  *Id.* at 17.  Accordingly, the Court concluded that, because the complaint failed to plausibly suggest that the impacts of climate change will imminently result in injury to Plaintiff's members or that

---

[2] In its dismissal motion, Defendant conceded that Plaintiff has standing to pursue the remaining CWA counts (Counts Ten through Fifteen).

there is a substantial risk that such harm will occur, Plaintiff lacked standing as to the dismissed claims. *Id.*

The Court's dismissal ruling provided that, if Plaintiff wished to file an amended complaint to attempt to address the deficiencies described in that ruling, it could seek leave to do so pursuant to Federal Rule of Civil Procedure 15(a) by October 20, 2022. *Id.* at 17–18. The Court further stated that, if Plaintiff sought to amend the complaint after October 20, its request would be governed by the good cause standard in Federal Rule of Civil Procedure 16(b). *Id.* at 18. The Court subsequently extended the October 20 deadline until November 3, 2022, and Plaintiff filed its present motion on that date.

In its proposed amended complaint ("PAC"), ECF No. 100-3, Plaintiff seeks to assert several new allegations against Defendant based largely on a declaration of Plaintiff's retained expert, Dr. Wendi Goldsmith, an earth scientist.[3] Most of Plaintiff's proposed new allegations provide additional context regarding how climate change will impact New Haven over the next several years and decades. *See, e.g.*, *id.* ¶¶ 80–82 (discussing the effects a "50-, 100-, or 500-year storm" could have on the Terminal); *id.* ¶ 94 (alleging that the berm heights at the Terminal will not provide adequate protection in a 100-year storm); *id.* ¶¶ 271–72 (discussing a projected 20-inch sea level rise between 2018 and 2050). In addition, Plaintiff seeks to add allegations regarding when severe storms might be expected to strike Connecticut, *id.* ¶¶ 231–32, and how such storms might be expected to cause a discharge of pollutants from the Terminal, *id.* ¶¶ 364–67. Plaintiff also seeks to insert new allegations pertaining to how Defendant is purportedly contributing to the pollution of the waters near the Terminal. *See id.* ¶¶ 106–17, 141–44, 314–21. Finally, Plaintiff

---

[3] Plaintiff submitted Goldsmith's declaration as well as several other documents, as attachments to its PAC. Plaintiff later filed a corrected version of Goldsmith's declaration. Goldsmith Decl., ECF No. 103.

5

seeks to add a new, nineteenth count, alleging that Defendant has violated the CWA by "causing or contributing to an exceedance of water quality standards." *Id.* ¶¶ 527–36.

### III. COUNTS ONE THROUGH NINE AND SIXTEEN THROUGH EIGHTEEN OF PLAINTIFF'S PROPOSED AMENDED COMPLAINT

In Counts One through Nine and Sixteen through Eighteen of its PAC, Plaintiff seeks to reassert the claims the Court previously dismissed from this action. Defendant argues that Plaintiff's proposed amendments as to these claims are futile because Plaintiff's proposed new allegations do not remedy the deficiencies described in the Court's dismissal ruling. Specifically, Defendant contends that the PAC fails to demonstrate, for purposes of standing, that injury to Plaintiff's members is imminent. For the reasons below, the Court finds that Plaintiff's proposed amended complaint plausibly alleges facts sufficient to demonstrate its standing as to these claims. Accordingly, Plaintiff's motion is GRANTED IN PART insofar as it pertains to Counts One through Nine and Sixteen through Eighteen of the PAC.

#### A. Legal Standard

The ability of a plaintiff to amend its complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). Here, the parties agree that, insofar as Plaintiff seeks to reassert the claims the Court previously dismissed from this action, Plaintiff's motion is governed by Rule 15(a)(2). Rule 15(a)(2), a liberal standard, instructs the Court to "freely give leave when justice so requires." Generally, a court will deny a proposed amendment pursuant to Rule 15(a)(2) only due to bad faith, futility, or prejudice to the opposing party. *Sacerdote*, 9 F.4th at 115.

Relevant here, "a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life*

6

*Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). If, however, "the underlying facts or circumstances relied upon by a plaintiff *may* be a proper subject of relief," the plaintiff "ought to be afforded an opportunity to test his claim on the merits." *United States v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (emphasis added) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Therefore, the Court "should dismiss claims for futility 'only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims.'" *Richard Mfg. Co. v. Richard*, 513 F. Supp. 3d 261, 290 (D. Conn. 2021). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1.

The Court may properly deny leave to amend on futility grounds where a plaintiff's "proposed amendments would not 'cure prior deficiencies' in the pleadings, such as a failure to allege standing." *O'Shea v. P.C. Richard & Son, LLC*, No. 15 CIV. 9069 (KPF), 2017 WL 3327602, at *7 (S.D.N.Y. Aug. 3, 2017) (citing *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017)). In such cases, amendment would be futile because, where a plaintiff "lacks constitutional standing to bring [an] action," the Court lacks the statutory or constitutional power to adjudicate the action and must dismiss it. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The doctrine of standing is "rooted in the traditional understanding of a case or controversy" and serves to "ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To establish Article III standing, a plaintiff must demonstrate "(1) that he or she suffered

an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, ___ U.S. ___, 140 S. Ct. 1615, 1618 (2020); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Injury in fact is the "first and foremost" of standing's three elements. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Plaintiffs seeking injunctive relief must prove that the identified injury in fact presents a "real and immediate threat of future injury," often termed "a likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order). The Supreme Court has made clear that "'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013)). Rather, a future injury constitutes an injury in fact only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). This ensures that "the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

When a defendant's standing arguments are "based solely on the allegations of the complaint or the complaint and exhibits attached to it," the plaintiff "has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Rather, in examining such a "facial" challenge to a plaintiff's standing, the Court is tasked with determining whether the complaint "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (alterations in original). Defendant mounts a facial challenge to Plaintiff's standing here; accordingly, the Court must look to the PAC to determine whether Plaintiff has alleged facts

8

that affirmatively and plausibly suggest that it has standing. In doing so, the Court must "accept as true all non-conclusory factual allegations" and "draw all reasonable inferences in [Plaintiff's] favor." *O'Shea*, 2017 WL 3327602, at *7 (citing *Pyskaty*, 856 F.3d at 225); *see Fulton v. Goord*, 591 F.3d 37, 41 (2d Cir. 2009) (where standing is challenged on the basis of the pleadings, the Court must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party").

B. Discussion

For the reasons below, the Court finds that Plaintiff has alleged sufficient facts to establish standing for present purposes as to Counts One through Nine and Sixteen through Eighteen of its PAC. *See Lujan*, 504 U.S. at 561 (describing that, since the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation"). Accordingly, Plaintiff's motion for leave to amend is granted as to these claims.

As a preliminary matter, the Court notes that Plaintiff's PAC—like its initial complaint—is far from a model of concision. Plaintiff's original complaint was 465 paragraphs and 88 pages long. Now, despite the Court noting at oral argument that the original complaint was quite lengthy, Plaintiff has submitted a PAC that consists of 536 paragraphs and 102 pages, as well as 670 pages of attachments. Goldsmith's declaration, on its own, spans nearly 70 pages and consists of 119 paragraphs, many of which are not probative of the risks of *near-term* harms Plaintiff's members might expect to experience, which was the issue the Court allowed Plaintiff the opportunity to

remedy. Plaintiff's motion for leave to amend references only thirteen of the PAC's 536 paragraphs.[4] *See* ECF No. 100-1 at 9–10.

Put simply, Plaintiff appears to have entirely disregarded the requirement in Federal Rule of Civil Procedure 8(a)(2) that a pleading contain "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief." (emphasis added). Nevertheless, because Defendant has not raised any arguments pertaining to Rule 8, the Court will proceed to consideration of the merits of Plaintiff's motion to amend. The Court notes, however, that Plaintiff's failure to comply with Rule 8, and the resulting "unnecessary prolixity" in Plaintiff's PAC, place an "unjustified burden" on both the Court and Defendant, who are "forced to select the relevant material from a mass of verbiage." *See Shabtai v. Levande*, 38 F. App'x 684, 686 (2d Cir. 2002) (summary order) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). The Court therefore admonishes Plaintiff's counsel for failing to adhere to Rule 8.

Turning to the merits of Plaintiff's present motion, the Court begins by noting that most of Plaintiff's proposed new allegations suffer from the same deficiencies with respect to standing as the allegations in Plaintiff's initial complaint. That is, the new allegations pertain in large part to the longer-term impacts of climate change, as opposed to how Plaintiff's members may be harmed in the near-term. *See, e.g.*, PAC ¶¶ 80–82 (discussing the effects that a "50-, 100-, or 500-year storm" could have on the Terminal); *id.* ¶ 94 (alleging that the berm heights at the Terminal will not provide adequate protection in a 100-year storm); *id.* ¶ 218 (discussing how the risk of a major hurricane in the North Atlantic is increasing 49% per decade); *id.* ¶¶ 271–72 (discussing a

---

[4] Plaintiff's opaque reference to "[m]any other paragraphs in the PAC referenc[ing] deficiencies at the Terminal and the clear risk of harm that is present now," *see* ECF No. 100-1 at 9, suffers from the precise flaw the Court identified at oral argument: the failure to point the Court to the appropriate places in the record that support Plaintiff's arguments. Tr. of Aug. 26, 2022, Hrg., ECF No. 95, at 19:6–9 ("Again, I think that obviously the complaint is very lengthy here and pointing the court to the place -- the relevant places in the record where documents exist going forward would be very helpful.").

projected 20-inch sea level rise between 2018 and 2050). Several of the assertions in Goldsmith's declaration likewise fail to demonstrate how Plaintiff's members might be harmed in the near-term. *See, e.g.*, Goldsmith Decl. ¶ 14 (discussing how the PAC understates the actual risk of harm in the context of long-term effects, using 2030, 2050, and 2100, as benchmark years); *id.* ¶ 20 (discussing how a system of currents in the Atlantic Ocean may collapse in the next 300 years); *id.* ¶ 28 (vaguely asserting that Defendant is unprepared for sea level rise, without discussing the short-term effects of sea level rise). As the Court stated in its dismissal ruling, such "allegations of how climate change is impacting New Haven, without allegations of how such impacts present a real and immediate threat of harm to Plaintiff's members, are insufficient to establish Article III standing." ECF No. 96 at 17. Thus, Plaintiff's new allegations about the longer-term impacts of climate change on the Terminal fall short of establishing standing as to the claims Plaintiff attempts to reassert.

Based on other assertions in the PAC and its attachments, however, the Court finds that Plaintiff has—albeit just barely—adequately alleged standing as to Counts One through Nine and Sixteen through Eighteen of the PAC. Plaintiff's general theory of injury as to these claims is that, if a severe storm were to strike New Haven, the Terminal would be inundated and a discharge of pollutants into surrounding waters would result. Thus, based on Plaintiff's framing of the claims at issue, the Court's analysis as to whether injury to Plaintiff's members is imminent necessarily hinges on two related inquiries: (1) the likelihood that a severe storm will strike the Terminal in the near-term; and (2) the likelihood that such a storm occurring in the near-term would cause a discharge of pollutants from the Terminal. In other words, Plaintiff's theory of imminent injury relies on the risk that pollutants will be discharged from the Terminal *if* a severe storm strikes New Haven. Logically, therefore, Plaintiff must set forth sufficient allegations to plausibly suggest that

there is both a sufficient risk that a severe storm will strike the Terminal in the near-term *and* a sufficient risk that such a storm will lead to a discharge of pollutants from the Terminal. If it does so, then Plaintiff has sufficiently alleged standing and its proposed amendment is not futile.

Recognizing that imminence is "a somewhat elastic concept," *Clapper*, 568 U.S. at 409, the Court does not view the two inquiries discussed above in terms of strict numerical probabilities, *see Baur*, 352 F.3d at 637 (noting that "the injury in fact requirement . . . is qualitative, not quantitative, in nature" and, as a result, "the probability of harm which a plaintiff must demonstrate in order to allege a cognizable injury-in-fact logically varies with the severity of the probable harm" (alteration in original)); *see also id.* at 642 (at the pleading stage, the plaintiff "need not present . . . statistical verification to prove that the risk actually exists"). The Court also bears in mind that the risk of pollutant discharges will necessarily vary based on the precise severity of the storm that could be expected to strike the Terminal, and that Plaintiff cannot be held to the impossible standard of predicting precisely when a severe storm will strike the Terminal or precisely how severe such a storm will be.[5] Finally, the Court understands that Plaintiff asserts not only that there is a risk that an impending storm will cause pollutant discharges from the Terminal but also that the impacts of climate change are constantly increasing this risk.

Upon review of Plaintiff's PAC with these considerations in mind, the Court finds that Plaintiff has sufficiently alleged standing for present purposes by plausibly suggesting that: (1) a Category 1 or 2 storm can be expected to strike the Terminal at virtually any time; and (2) there is a substantial risk that such a storm will cause the discharge of pollutants from the Terminal. Specifically, with respect to the first point, Plaintiff—quoting a CT DEEP document from 2019—

---

[5] Defendant has provided the Court with no authority for imposing a requirement that, in order to establish standing, Plaintiff must plead that a sufficiently severe storm is certain to strike New Haven prior to the expiration of the General Permit on September 30, 2024. *See* ECF No. 106 at 15. Plaintiff understandably cannot pinpoint exactly when such a storm might occur.

alleges that a Category 1 storm can be expected to make landfall in Connecticut every ten to fifteen years, and that a Category 2 storm can be expected to make landfall in Connecticut every twenty-five to thirty years. PAC ¶ 231. Plaintiff further alleges that, because the last hurricane to impact Connecticut was Hurricane Bob—a Category 2 storm—in 1991, Connecticut can expect another hurricane in the foreseeable future. *Id.* With respect to the second point, Plaintiff alleges that the "potential for a catastrophic oil spill exists" at the Terminal, *id.* ¶ 366, and that "[w]ithout upgrades in the Terminal infrastructure, spills and releases . . . are virtually certain to occur at the Terminal and in New Haven Harbor more broadly," *id.* ¶ 367. These allegations are buttressed by Goldsmith's averments that a Category 1 storm could inundate areas of the Terminal (including the entire containment area), submerge containment berms up to their crests, and result in pollutant discharges, and that, if a Category 2 storm strikes New Haven, the Terminal's containment berms will be fully submerged. Goldsmith Decl. ¶¶ 53, 115.

These allegations, coupled with Plaintiff's allegations that climate change is continually increasing the risk that a severe storm will cause a discharge of pollutants from the Terminal, are sufficient to plausibly suggest that there is a substantial risk of harm to Plaintiff's members in the near-term. In other words, taken together—and in the context of the other allegations in the PAC regarding the worsening effects of climate change and Defendant's purported failure to prepare for a severe storm—these assertions suffice to plausibly allege that "a major weather event, magnified by the effects of climate change, could happen at virtually any time, resulting in the catastrophic release of pollutants due to [Defendant's] alleged failure to adapt [the Terminal] to address those impending effects." *See Conservation L. Found., Inc. v. Shell Oil Prod. US*, No. CV 17-396 WES, 2020 WL 5775874, at *1 (D.R.I. Sept. 28, 2020); *see also id.* ("While it might not

13

occur for many years, the fact that [the major weather event] is certainly impending is enough to meet the standard.").[6]

For these reasons, Plaintiff's motion to amend is GRANTED IN PART, to the extent Plaintiff seeks leave to reassert the claims in Counts One through Nine and Sixteen through Eighteen of its initial complaint.[7]

### IV. COUNT NINETEEN OF PLAINTIFF'S PROPOSED AMENDED COMPLAINT

The Court next finds that Plaintiff has failed to show that it acted diligently in bringing Count Nineteen of its PAC, and that permitting Plaintiff to assert Count Nineteen at this stage of this litigation would unfairly prejudice Defendant. Therefore, the Court denies Plaintiff's motion for leave to amend to the extent Plaintiff seeks to assert its new CWA claim in Count Nineteen of the PAC.

---

[6] For purposes of clarifying the scope of this ruling, the Court notes that Plaintiff has plausibly alleged standing to seek relief *only* to the extent such relief would remedy the substantial risk of *near-term* harms it has alleged. This holding is consistent with the standing rulings in other cases Plaintiff is litigating in the Northeast. *See Conservation L. Found., Inc.*, 2020 WL 5775874, at *1 (finding that Plaintiff lacked standing "to the extent that its claims rely on future harms," such as claims that, "by 2100, the National Oceanic and Atmospheric Administration predicts — worst-case scenario — a greater-than-eight-foot sea level increase," but noting that Plaintiff had "asserted certainly impending harm" as to "near-term harms from foreseeable weather events"); Order at 2–3, *Conservation L. Found., Inc. v. ExxonMobil Corp.*, No. 16-cv-11950 (D. Mass. Sept. 13, 2017), ECF No. 29 (finding that Plaintiff stated a "plausible claim that there is a 'substantial risk' that severe weather events, such as storm surges, heavy rainfall, or flooding, will cause the terminal to discharge pollutants . . . in the near future and while the Permit is in effect," but that Plaintiff did not "have standing for injuries that allegedly will result from rises in sea level, or increases in the severity and frequency of storms and flooding, that will occur in the far future, such as in 2050 or 2100"). For example, because Plaintiff has not adequately pleaded that there is a substantial risk that a Category 3, 4, or 5 storm will strike New Haven in the near-term, Plaintiff may not pursue relief requiring Defendant to go so far as to prepare the Terminal for the risks of such a storm in the near-term. Nor can Plaintiff seek relief for claims that the gradual effects of climate change such as sea level rise, standing alone and unconnected to a severe weather event, will eventually pose a grave threat to the Terminal in, for example, 2050 or 2100.

[7] Defendant argues, via footnote, that it would be prejudiced if Plaintiff is not limited to seeking the injunctive relief it previously sought in this action. ECF No. 106 at 10–11 n.4. Plaintiff's PAC, however, seeks precisely the same relief Plaintiff sought in its original complaint. *Compare* PAC at 101, *with* Compl. at 86–87. Notwithstanding this fact, Defendant appears to be seeking to limit Plaintiff's requests for injunctive relief based on the manner in which Plaintiff presented those requests at oral argument on Defendant's motion to dismiss. *See* ECF No. 106 at 11 n.4 ("[I]f the Court does allow the amendment of the dismissed counts, it should limit those counts to seeking only the injunctive relief previously articulated to the Court at oral argument."). Because Defendant has offered no basis for limiting the requested relief in a proposed amended complaint in such a manner, the Court declines to do so at this time.

A. Legal Standard

As noted, a plaintiff's request to amend its complaint is governed by Federal Rules of Civil Procedure 15 and 16. *Sacerdote*, 9 F.4th at 115. Here, the parties disagree as to whether Rule 15(a)(2) or Rule 16(b) applies to Plaintiff's request to assert Count Nineteen of its PAC. As discussed above, Rule 15(a)(2) is a liberal standard which instructs the Court to "freely give leave when justice so requires," and the Court may deny a proposed amendment pursuant to Rule 15(a)(2) only due to bad faith, futility, or prejudice to the opposing party, *Sacerdote*, 9 F.4th at 115. Plaintiff contends that Rule 15(a)(2) governs whether the Court should permit it to assert Count Nineteen.

Defendant, on the other hand, contends that Rule 16(b) governs whether Plaintiff should be permitted to assert Count Nineteen. The "good cause" standard in Rule 16(b)(4) applies where a district court has issued "a scheduling order setting a date after which no amendment will be permitted" and the plaintiff requests to amend the complaint after that date. *See id.* Whether good cause exists generally "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000), *overruled on other grounds as recognized in Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019). The Court can also consider whether allowing amendment of the complaint at a particular stage of litigation would prejudice the defendant. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

B. Discussion

The Court begins by finding that Rule 16(b), rather than Rule 15(a)(2), applies to Plaintiff's request to assert Count Nineteen of the PAC. The Court's initial scheduling order required Plaintiff to file any motion to amend the complaint by April 22, 2022, and it stated that any such motion filed after that date would be governed by the good cause standard in Rule 16(b). ECF No. 58 at

1. Although the scheduling order was subsequently revised multiple times prior to the Court's dismissal ruling, ECF Nos. 71, 85, 94, none of those revisions altered Plaintiff's deadline for amending its complaint. Then, in its dismissal ruling, the Court stated: "If Plaintiff wishes to file an amended complaint *that attempts to address the deficiencies described in this ruling*, it may seek leave of the Court to do so pursuant to Federal Rule of Civil Procedure 15(a) by October 20, 2022. If Plaintiff seeks to amend the complaint after that date, its request will be governed by the good cause standard in Federal Rule of Civil Procedure 16(b)." ECF No. 96 at 17–18 (emphasis added).[8] Plaintiff interprets this language as extending its deadline to seek leave under Rule 15(a)(2) to make *any* amendment to the complaint, while Defendant interprets this language to mean that Plaintiff was granted a limited opportunity to seek amendment under Rule 15(a)(2) *only* to remedy the deficiencies described in the Court's dismissal ruling.

The Court agrees with Defendant that the good cause standard in Rule 16(b) governs Plaintiff's request to add a new count to its complaint. In allowing Plaintiff additional time to seek leave under Rule 15(a)(2) "to file an amended complaint that attempt[ed] to address the deficiencies described in [the Court's dismissal] ruling," the Court did not provide Plaintiff with the opportunity to seek leave under Rule 15(a)(2) to amend the complaint *for any purpose*. In other words, the Court was not extending Plaintiff's deadline in the scheduling order for seeking leave to amend the complaint for all purposes; rather, it was providing Plaintiff a limited opportunity to seek to amend its complaint to remedy the deficiencies described in the dismissal ruling. Amendments for any purpose other than to remedy the deficiencies described in the

---

[8] As discussed, the Court subsequently extended Plaintiff's October 20 deadline until November 3, 2022, ECF No. 98, and Plaintiff filed its present motion on that date, ECF No. 100.

dismissal ruling were still subject to the pleading amendment deadline set forth in the Court's scheduling order.⁹ Thus, Rule 16(b) governs Plaintiff's request to assert Count Nineteen.

Applying Rule 16(b), the Court finds that Plaintiff has failed to show good cause to add Count Nineteen to its complaint. In Count Nineteen of its PAC, Plaintiff asserts that the Terminal's stormwater discharge is causing or contributing to, among other things, "exceedances of the applicable . . . water quality standards for New Haven Harbor," PAC ¶ 529, impaired habitats for aquatic life and wildlife, *id.* ¶ 531, impaired shellfish harvesting, *id.*, discoloration of New Haven Harbor, *id.* ¶ 533, and issues with the taste and odor of the waters in New Haven Harbor, *id.* ¶ 534. *See also id.* ¶¶ 314–21. Plaintiff further asserts that the Terminal's "cause of and contribution to exceedances of water quality standards due to discharge of stormwater and non-stormwater discharges are exacerbated by severe weather events including precipitation and will be further exacerbated by substantial risks of storm surge, ongoing and certainly impending sea level rise, intensifying precipitation, and flooding." *Id.* ¶ 536. Finally, Plaintiff contends that "[t]hese substantial risks are magnified and increased by climate change." *Id.*

None of the allegations pertaining to Count Nineteen concern purported facts that Plaintiff—exercising reasonable diligence—could not have discovered before the April 22, 2022, deadline for pleading amendments in this action. While leave to amend may be appropriate under certain circumstances where a party "learns new facts through discovery that were unavailable prior to the applicable deadline" and "moves promptly" to amend based on such facts, *see Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016), the Court "must also examine whether [the plaintiff] had notice of, or was diligent in discovering, the alleged new facts," *Rococo Assocs., Inc. v. Award*

---

⁹ The Court notes that Plaintiff never suggested—in its pleadings, at oral argument, or otherwise—that it would seek to amend the complaint to assert any new claims.

17

*Packaging Corp.*, No. 06-CV-0975 (JS)(ARL), 2007 WL 2026819, at *3 (E.D.N.Y. July 9, 2007). Here, Plaintiff has failed to show that it acted diligently in discovering the alleged new facts it seeks to assert with respect to Count Nineteen.

As Defendant points out, Plaintiff's original complaint specifically discussed water quality standards, which are a primary subject of Count Nineteen.  *See* Compl. ¶¶ 132, 156.  Indeed, Defendant's alleged failure to properly account for the monitoring of stormwater discharges into New Haven Harbor in its SWPPP was at the core of Count Three of Plaintiff's initial complaint. *See id.* ¶¶ 338–40.  Count Nineteen is also closely related to the subject matter of Plaintiff's claims in Counts Ten through Fifteen.  Plaintiff offers no reason why, exercising reasonable diligence, it could not have also asserted its claim about present water quality concerns in Count Nineteen when it initiated this action or, at the very least, before the pleading amendment deadline.  Nor does Plaintiff respond to Defendant's argument that it could have at least inspected the area surrounding the Terminal prior to filing its wide-ranging complaint that discussed the operation of the Terminal in extensive detail, or that—at the very least—it had the opportunity to inspect the Terminal and recognize the potential viability of its claim in Count Nineteen before the pleading amendment deadline.  Instead, Plaintiff offers only that it "added Count [Nineteen] when it became aware of facts that supported the claim through Dr. Goldsmith's visits to the area." ECF No. 109 at 10.  But Plaintiff easily could have engaged Goldsmith or another individual to survey the area before the amendment deadline.  And the mere fact that Goldsmith's visit to the area might have brought the proposed claim in Count Nineteen into focus does not mean that Plaintiff acted diligently in investigating the purported facts related to this claim prior to the amendment deadline. Accordingly, Plaintiff has failed to demonstrate that it acted diligently in asserting Count Nineteen.

The Court also finds that permitting Plaintiff to assert Count Nineteen at this stage of this action would be unfairly prejudicial to Defendant. The Second Circuit has recognized that a party is prejudiced if leave to amend a complaint would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Plaintiff initiated this suit nearly two years ago, in July of 2021, and the parties have been proceeding with discovery throughout the course of this litigation. If Plaintiff were permitted to add Count Nineteen to its complaint, the scope of discovery would need to be expanded to permit the parties to attempt to discern whether—and the extent to which—Defendant is presently causing or contributing to the various ways in which the waters of New Haven Harbor are impaired, which would likely prolong resolution of this action. Although Plaintiff claims Defendant's arguments regarding expansion of the scope of discovery are merely conclusory, it is clear to the Court that Count Nineteen goes beyond what was previously alleged. Indeed, if it did not expand the scope of the litigation in at least some respects, Plaintiff would not be seeking to add it as a new, separate count. Given how long this action has been pending, the Court finds that expanding the scope of discovery in this manner would unfairly prejudice Defendant. Accordingly, the prejudice Defendant would experience provides an additional reason for denying Plaintiff's request to assert Count Nineteen.[10]

For these reasons, Plaintiff's motion is DENIED IN PART, to the extent it pertains to Count Nineteen of the PAC.

---

[10] Because Defendant would be unfairly prejudiced if the Court were to permit Plaintiff to proceed with Count Nineteen, the Court would deny Plaintiff's request to add Count Nineteen even if Rule 15(a)(2) rather than Rule 16(b) governed this portion of Plaintiff's motion. Separately, because the Court is not permitting Plaintiff to add Count Nineteen on other grounds, it need not reach Defendant's argument that Count Nineteen is futile, at least in part, given that Plaintiff has alleged that oil and grease in the waters surrounding the Terminal are below the benchmark levels set forth in the General Permit. *See* PAC ¶¶ 116–17.

## V.  CONCLUSION

For the reasons described herein, Plaintiff's motion to amend is GRANTED IN PART, to the extent Plaintiff seeks to reassert Counts One through Nine and Sixteen through Eighteen of its original complaint, and DENIED IN PART, to the extent Plaintiff seeks to allege additional CWA violations in Count Nineteen of its proposed amended complaint.  By **June 28, 2023**, Plaintiff shall docket an amended complaint that omits Count Nineteen and paragraphs 314 through 321 of its proposed amended complaint.  Pursuant to the Court's March 27, 2023, order granting Plaintiff's consent motion to continue deadlines, ECF No. 114, the parties shall file an updated and revised proposed scheduling order by **June 28, 2023**.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of June, 2023.

                                  */s/ Sarala V. Nagala*
                                  SARALA V. NAGALA
                                  UNITED STATES DISTRICT JUDGE