# EXHIBIT A

**EXHIBIT A**[1]

| RFA No. | CLF's Original Requests | CLF's Responses and/or Revised Requests | CLF's Further Revised Requests |
|---|---|---|---|
| 1 | Admit that discharges from storm surge are non-stormwater discharges under the General Permit. | Admit that Pike manages or treats discharges from storm surge as non-stormwater discharges under the General Permit.<br><br>The General Permit defines "stormwater" as "waters consisting of rainfall runoff, including snow or ice melt during a rain event but not including mine dewatering waters." General Permit § 2. The General Permit does not define "non-stormwater" or "discharge." For purposes of responding to this RFA, the term "discharge" refers to a release. | Admit that Defendant does not manage or treat discharges from storm surge as stormwater discharges under the General Permit. |
| 4 | Admit that discharges from storm surge are not authorized by an individual or other general permit in the State of Connecticut | RFA 4 does not call for a legal conclusion; rather, RFA 4 asks Pike to admit or deny the factual matter of whether the General Permit or any other permit in the State of Connecticut authorizes storm surge discharges. The term "storm surge" refers to the abnormal rise in sea level caused by a storm, measured as the height of the water above the normal predicted astronomical tide. The term "discharge" refers to a release. | Admit that the term "stormwater" in any of Defendant's permits issued by CT DEEP for the Terminal does not include storm surge. |
| 8 | Admit that Defendant did not design the Terminal to minimize | RFA 8 does not call for a legal conclusion; rather, RFA 8 asks Pike to admit or deny | Admit that Defendant did not design the Terminal to minimize the risk of oil and |

---

[1] Conservation Law Foundation, Inc. ("CLF") hereby incorporates (a) the Instructions and Definitions provided in CLF's First Set of Requests for Admission, dated April 30, 2025, and (b) CLF's letter response to Pike Fuels Limited Partnership regarding these requests, dated June 25, 2025.

1

| | | | |
|---|---|---|---|
| | the risk of oil and chemical spills resulting from climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge | the factual matter of whether Pike designed the Terminal to minimize the risk of oil and chemical spills resulting from climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge. As CLF stated in its First RFAs, "Unless otherwise stated, the applicable time frame for these Requests for Admission is January 1, 2011, to April 10, 2024." CLF's First RFAs at 2. | chemical spills resulting from climate change factors.<br><br>The term "design" means "to create, fashion, execute, or construct according to plan: DEVISE, CONTRIVE." The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 10 | Admit that the information submitted in or with the SWPPP was not gathered and evaluated utilizing a system designed to assure that qualified personnel considered the reasonably foreseeable risks of pollutant discharges associated with climate change | RFA 10 does not call for a legal conclusion; rather, RFA 10 asks Pike to admit or deny the factual matter of whether the information that was submitted in or with any Terminal SWPPP was gathered and evaluated in a manner designed to assure that qualified personnel considered the reasonably foreseeable risks of pollutant discharges associated with climate change. The General Permit requires permittees to certify that the SWPPPs and attachments were prepared in accordance with a system designed to assure that qualified personnel properly gathered and evaluated information submitted and that such information was true, accurate, and complete to the best of their knowledge and belief. See General Permit §§ 4(c)(2)(I), 5(c)(4)(A), 6(d). | Admit that Defendant did not gather and evaluate information submitted in the SWPPP using a process that would ensure that individuals certifying the SWPPP considered the reasonably foreseeable risks of pollutant discharges associated with climate change.<br><br>The term "climate change" means change in the state of the climate that can be identified by changes in the mean, extremes, and/or the variability of its properties and that persist for an extended period, typically decades or longer. |
| 11 | Admit that Defendant knew that there was a risk of a loss of | RFA 11 does not call for a legal conclusion; rather, RFA 11 asks Pike to | Admit that Defendant knew that there was a risk of a loss of primary |

2

| | | | |
|---|---|---|---|
| | primary containment at the Terminal due to climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge | admit or deny the factual matter of whether Pike knew (or did not know) that there was a risk of loss of primary containment at the Terminal due to climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge. CLF has already defined "climate change factors" in the request itself. The term "sea level rise" refers generally to the increase in the average height of the ocean's surface relative to land. The term "severe weather" refers to weather that is severe or of great degree; intense. The term "storm surge" refers to the abnormal rise in sea level caused by a storm, measured as the height of the water above the normal predicted astronomical tide. The phrase "risk of loss of primary containment" refers generally to the risk of an unplanned or uncontrolled release of fuel from an above ground storage tank at the Terminal. | containment at the Terminal due to climate change factors.

The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 12 | Admit that Defendant's responsible corporate officer did not make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit, including ensuring | RFA 12 does not call for a legal conclusion; rather RFA 12 asks Pike to admit or deny the factual matter of whether Pike's responsible corporate officer inquired of persons who manage Pike's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit, | Admit that Defendant's responsible corporate officer did not make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit regarding accounting for climate change factors at the Terminal. |

3

| | | | |
|---|---|---|---|
| | that qualified personnel properly gathered and evaluated information submitted in or with the SWPPP | including ensuring that qualified personnel properly gathered and evaluated information submitted in or with any Terminal SWPPP. See General Permit §§ 4(c)(2)(I), 5(c)(4)(A), 6(d). To address Pike's claim that this request is vague and ambiguous, CLF directs Pike to the terms of the General Permit. See id. | The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 14 | Admit that the volume of the Terminal's secondary containment area is insufficient under the terms of the General Permit | Admit that Pike determined, by its own calculations or otherwise, that the Terminal's secondary containment area is insufficient under the terms of the General Permit. | Admit that Defendant determined, by its own calculations or otherwise, that the volume of the Terminal's secondary containment area is insufficient under the terms of the General Permit. |
| 15 | Admit that the Terminal's secondary containment area is permeable | Admit that Pike determined, by its own calculations or otherwise, that the Terminal's secondary containment area was not impermeable as required by the General Permit § 5(b)(9)(A)(i). | No change. |
| 21 | Admit that Defendant did not implement stormwater management or treatment measures considering the impact of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the potential of various sources at the Terminal to contribute pollutants to stormwater discharges | Admit that Defendant did not consider the impact of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the potential of various sources at the Terminal to contribute pollutants to stormwater discharges when implementing stormwater management or treatments measures at the Terminal.<br><br>The term "implementing" refers to the act of carrying out or putting into effect a stormwater management or treatment | Admit that Defendant did not consider the impact of climate change factors on the potential of various sources at the Terminal to contribute pollutants to stormwater discharges when implementing stormwater management at the Terminal.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. The term "stormwater management" includes but |

4

|  |  |  |  |
|---|---|---|---|
|  |  | measure. The term "climate change factors" is defined in the request itself. The term "sea level rise" refers generally to the increase in the average height of the ocean's surface relative to land. The term "storm surge" refers to the abnormal rise in sea level caused by a storm, measured as the height of the water above the normal predicted astronomical tide. | is not limited to any measure to treat, dispose, divert, or otherwise manage stormwater at the Terminal. |
| 22 | Admit that it is feasible to consider the impacts of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants | Admit that Defendant considers the impacts of climate change factors, such as such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants.<br><br>The term "diversion" refers to the act of diverting or changing course or direction. The terms "uncontaminated run-on" refers generally to liquid that moves onto the Terminal site that is not contaminated with pollutants. | Admit that Defendant considers the impacts of climate change factors on the diversion of uncontanminated run-on to avoid areas that may contribute pollutants.<br><br>The term "diversion" means "the act or instance of diverting or straying from a course, activity, or use: DEVIATION." The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 27 | Admit that information Defendant submitted to CT DEEP did not include information relating to the potential impacts of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal | Admit that information Defendant submitted to CT DEEP, in its SWPPPs or via another medium or manner, regarding the Terminal did not include information relating to the potential impacts of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal. | Admit that information Defendant submitted to CT DEEP regarding the Terminal did not include information relating to the impacts of climate change factors on the Terminal.<br><br>The "information Defendant submitted to CT DEEP" refers to information submitted in the SWPPPs and via another |

| | | | | medium or manner. The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
|---|---|---|---|---|
| 28 | Admit that Defendant was aware of the potential impacts of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal when it submitted information to CT DEEP | Admit that Defendant was aware of the potential impacts of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal when it submitted information regarding the Terminal to CT DEEP in its SWPPPs or via another medium or manner. | | Admit that Defendant was aware of the potential for the impacts of climate change factors on the Terminal when it submitted information regarding the Terminal to CT DEEP, such as in the SWPPPs or via another medium or manner.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 33(a) | Admit that Defendant was aware of the potential for climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal to cause pollution to the surface waters of the State of Connecticut | Admit that Defendant was aware of the potential for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, to impact the Terminal and cause the New Haven Harbor and/or the Long Island Sound to become polluted. | | Admit that Defendant was aware of the potential for climate change factors at the Terminal to cause New Haven Harbor to become polluted.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 33(b) | | | | Admit that Defendant was aware of the potential for climate change factors at the |

| | | | Terminal to cause Long Island Sound to become polluted.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
|---|---|---|---|
| 37 | Admit that climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, create significant sources or potential sources of pollution at the Terminal | Admit that climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, create significant sources or potential sources of pollution at the Terminal if and/or when they occur at the Terminal.<br><br>The term "create" refers to bringing into existence. The term "significant" refers to having or likely have influence or effect. The term "sources" refers to a point of origin. The term climate change factors is defined in the request itself. The term "sea level rise" refers generally to the increase in the average height of the ocean's surface relative to land. The term "storm surge" refers to the abnormal rise in sea level caused by a storm, measured as the height of the water above the normal predicted astronomical tide. The term "potential" sources refers to possible sources. | Admit that climate change factors potentially cause pollution at the Terminal.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |

7

| | | | |
|---|---|---|---|
| 38 | Admit that Defendant was aware that it was necessary to address significant sources or potential sources of pollution due to climate change, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal | Admit that Defendant became aware that it must amend its SWPPP to address significant sources or potential sources of pollution due to climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal.<br><br>The term "significant" refers to having or likely have influence or effect. The term "sources" refers to a point of origin. The term climate change factors is defined in the request itself. The term "sea level rise" refers generally to the increase in the average height of the ocean's surface relative to land. The term "storm surge" refers to the abnormal rise in sea level caused by a storm, measured as the height of the water above the normal predicted astronomical tide. The term "potential" sources refers to possible sources. | Admit that Defendant became aware that it must amend its SWPPP to address pollution potentially caused by climate change factors at the Terminal.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 48 | Admit that stormwater has infiltrated into the ground at the Terminal. | Admit that stormwater has seeped into the ground at the Terminal, including the ground within the Terminal's secondary containment area. | No change. |
| 49 | Admit that Defendant did not receive approval from CT DEEP to infiltrate stormwater into the ground at the Terminal. | Admit that CT DEEP did not communicate to or inform Defendant that it could allow stormwater to seep into the ground at the Terminal, including the ground within the Terminal's secondary containment area. | No change. |

8

| 51 | Admit that the Terminal's secondary containment area has been permeable at least from October 1, 2011, to the present. | Admit that stormwater has seeped into the ground in the Terminal's secondary containment area at various points in time during the period of January 1, 2011, through April 2024. | No change. |
|---|---|---|---|
| 53 | Admit that Defendant has been aware of and knows about the scientific consensus that climate change is occurring and is primarily caused by human activity. | RFA 53 is relevant to CLF's CWA claims because those claims are premised, in part, on Pike's failure to account for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal. To address Pike's other objections, CLF offers the following revision:<br><br>Admit that Defendant, such as Defendant's employees involved in preparing and/or approving the SWPPP, has been aware of and knows that climate change is occurring and is primarily caused by human activity. | Admit that Defendant, such as Defendant's employees involved in preparing and/or approving the SWPPP, has been aware of and knows that climate change is occurring.<br><br>The term "climate change" means change in the state of the climate that can be identified by changes in the mean, extremes, and/or the variability of its properties and that persist for an extended period, typically decades or longer. |
| 54 | Admit that Defendant has been aware of and knows about reports by organizations, governmental bodies, and oil and gas entities regarding the impacts of climate change, including financial risks. | RFA 54 is relevant to CLF's CWA claims because those claims are premised, in part, on Pike's failure to account for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal. To address Pike's other objections, CLF offers the following revision: | Admit that Defendant has been aware of and knows about any publications by any organizations, governmental bodies, or oil and gas entities concerning the impacts of climate change factors on coastal communities or coastal infrastructure.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, |

| | | | |
|---|---|---|---|
| | | Admit that Defendant has been aware of and knows about any publications by any organizations, governmental bodies, or oil and gas entities concerning the impacts of climate change to coastal communities or coastal infrastructure. | precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |
| 56 | Admit that Defendant has known about steps that oil and gas entities have taken to adapt and prepare their infrastructure to withstand the impacts of climate change. | RFA 56 is relevant to CLF's CWA claims because those claims are premised, in part, on Pike's failure to account for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal. Additionally, this RFA is not vague or confusing or "so general that it is impossible to answer." Pike's RFA Responses at 27. Rather, the request simply asks whether Pike has knowledge of any steps or actions that other oil and gas entities have taken to adapt and prepare their infrastructure, like above ground storage tanks, to withstand the impacts of climate change. If Pike has no knowledge of any such steps or actions that other related entities have taken, then Pike must deny this request. | Admit that Defendant has known about steps taken by oil and gas entities that own and/or operate, or have owned and/or operated, coastal bulk fuel storage facilities to adapt and prepare their infrastructure to withstand the impacts of climate change.<br><br>The term "climate change" means change in the state of the climate that can be identified by changes in the mean, extremes, and/or the variability of its properties and that persist for an extended period, typically decades or longer. |
| 57 | Admit that Defendant has employed individuals with subject matter expertise regarding the impacts of climate change generally and at coastal bulk fuel storage facilities, such as the Terminal. | RFA 57 is relevant to CLF's CWA claims because those claims are premised, in part, on Pike's failure to account for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the | Admit that Defendant has employed individuals with expertise regarding the impacts of climate change factors at coastal bulk fuel storage facilities, such as the Terminal. |

| | | | |
|---|---|---|---|
| | | Terminal. Additionally, The term "expertise" refers to expert skill or knowledge. To address Pike's other objections, CLF provides the following revision:<br><br>Admit that Defendant has employed individuals with expertise regarding the impact of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, generally and at coastal bulk fuel storage facilities, such as the Terminal. | The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. |

11