**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONSERVATION LAW FOUNDATION, INC., | : | |
| | : | Case No.: 3:21-cv-00932-SVN |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PIKE FUELS LIMITED PARTNERSHIP, | : | |
| | : | |
| Defendant. | : | September 29, 2025 |

## JOINT STATUS REPORT

Plaintiff Conservation Law Foundation, Inc. ("CLF") and Defendant Pike Fuels Limited Partnership ("Pike") submit this status report in accordance with the Court's September 16, 2025 Order (Doc No. 296) to provide an update on the status of the parties' meet and confer process to resolve disputes concerning certain of CLF's First Set of Requests for Admission.

1. On September 4, 2025, CLF served 18[1] further revised requests for admission ("RFAs"). The RFAs are attached as Exhibit A.

2. CLF did not make further revisions to four RFAs and asked Pike to respond to those RFAs as set out in CLF's June 25, 2025 letter. The language of RFAs 15, 48, 49, and 51 is attached as Exhibit B.

3. On September 9, 2025 Pike served responses and objections to the 22 disputed RFAs. The responses and objections are attached as Exhibit C.

4. On September 15, 2025 the Parties met and conferred.

5. During the meet and confer CLF agreed to attempt further revisions to certain RFAs in response to Pike's offer that CLF try to do so in its September 9 written objections and during

---

[1] CLF revised RFA No. 33 into RFA Nos. 33(a) and 33(b). For purposes of this status report, RFA Nos. 33(a) and 33(b) are counted as one RFA.

the meet and confer. CLF also explained why it took issue with several of the responses and objections, and counsel for Pike agreed to consider CLF's positions internally.

6. On September 24, 2025, CLF served five[2] further revised RFAs and offered to meet and confer. The RFAs are attached as Exhibit D.

7. On September 26, 2025, Pike served responses and objections to the five further revised RFAs. The responses and objections are attached as Exhibit E.

8. Pike provided admissions or denials to ten of the 22 disputed RFAs. *See* Exhibit A at RFA Nos. 8, 10, 11, 14, 15, 38, 48, 51, 53, and 57. As such, these RFAs have been resolved and do not require the Court to rule upon them.

9. Pike stands on its objections to the remaining twelve disputed RFAs. *See* Exhibit A at RFA Nos. 1, 4, 12, 22, 33, 37 and 49; Exhibit B at RFA Nos. 21, 27, 28, 54, and 56.

10. The current text of the disputed RFA and corresponding objections that require the Court's ruling on are set forth below.

| RFA No. | Current Text of RFA | Current Objections |
|---|---|---|
| 1 | Admit that Defendant does not manage or treat discharges from storm surge as stormwater discharges under the General Permit. | Defendant objects that this Request still calls for a legal conclusion. Specifically, it is predicated on making the legal determination of whether storm surge is or is not a stormwater discharge under the General Permit. |
| 4 | Admit that the term "stormwater" in any of Defendant's permits issued by CT DEEP for the Terminal does not include storm surge. | Defendant objects that this Request still calls for a legal conclusion. Specifically, it is predicated on making the legal determination of whether storm surge is or is not a stormwater discharge under the General Permit. |
| 12 | Admit that Defendant's responsible corporate officer did not make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges | Defendant objects that this further revision, is, in fact, an attempt to ask a new Request for Admission outside the time allowed under the scheduling order. Thus, the new revision is an improper request. The original Request did not |

---

[2] CLF revised RFA No. 54 into RFA Nos. 54(a) and 54(b) and revised RFA No. 56 into RFA Nos. 56(a) and 56(b). For purposes of this status report, RFA Nos. 54(a) and 54(b) are counted as one RFA and RFA Nos. 56(a) and 56(b) are counted as one RFA.

2

| | | |
|---|---|---|
| | authorized by the General Permit regarding accounting for climate change factors at the Terminal. | seek any information regarding "climate change factors." Further, the new request, as written is vague and ambiguous. Furthermore, Plaintiff's definition of "climate change factors" prohibitively makes the Request compound. |
| 21 | Admit that when implementing stormwater management at the Terminal, Defendant did not consider the impact of climate change factors in Defendant's analysis of the potential of various sources at the Terminal to contribute pollutants to stormwater discharges.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. The term "stormwater management" includes but is not limited to any measure to treat, dispose, divert, or otherwise manage stormwater at the Terminal. | Plaintiff's further revised Request No. 21 does not resolve the issues with the original or previously revised Request, as it is still compound and still uses a confusing definition of the term "client change factors." Plaintiff's further revised Request No. 21 is simply a restatement of the prior, defective request. Defendant stands on its prior objections, as augmented and refined herein. |
| 22 | Admit that Defendant considers the impacts of climate change factors on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants.<br><br>The term "diversion" means "the act or instance of diverting or straying from a course, activity, or use: DEVIATION." The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. The terms "uncontaminated run-on" refers generally to liquid that moves onto the Terminal site that is not contaminated with pollutants. | Defendant objects that this Request, as written, is still vague and ambiguous. It is unclear what "uncontaminated run-on" means and otherwise does not identify a fact or application of fact that can be clearly admitted or denied. Additionally, Plaintiff's further revised Request No. 22 is also a restatement of the prior, defective revised request. |
| 27 | Admit that Defendant's submittals to CT DEEP did not include consideration of the impacts of climate change factors on the Terminal.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency | Plaintiff's further revised Request No. 27 does not resolve the issues with the original or previously revised Request, as it is still irrelevant and uses a confusing definition of the terms "client change factors" and "submittals." Plaintiff's further revised Request No. 27 is simply a restatement of the |

3

| | | |
|---|---|---|
| | and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. The term "submittals" refers to information submitted in the SWPPPs and via another medium or manner. | prior, defective request. Defendant stands on its prior objections, as augmented and refined herein. |
| 28 | Admit that Defendant was aware of potential impacts of climate change factors on the Terminal when Defendant made submittals to CT DEEP.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. The term "submittals" refers to information submitted in the SWPPPs and via another medium or manner. | Plaintiff's further revised Request No. 28 does not resolve the issues with the original or previously revised Request, as it is still irrelevant and uses a confusing definition of the terms "client change factors" and "submittals." Plaintiff's further revised Request No. 28 is simply a restatement of the prior, defective request. Defendant stands on its prior objections, as augmented and refined herein. |
| 33(a) | Admit that Defendant was aware of the potential for climate change factors at the Terminal to cause New Haven Harbor to become polluted.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. | Plaintiff's further revised Request No. 33(a) does not resolve the issues with the original and it is unclear what "climate change factors at the Terminal means." The terminal itself is not a source of severe weather and it is not clear what source of pollution would cause New Haven Harbor to be polluted, as this request is written. Defendant stands on its objections, but is willing to meet and confer further on this Request. |
| 33(b) | Admit that Defendant was aware of the potential for climate change factors at the Terminal to cause Long Island Sound to become polluted.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. | Plaintiff's further revised Request No. 33(b) does not resolve the issues with the original and it is unclear what "climate change factors at the Terminal means." The terminal itself is not a source of severe weather and it is not clear what source of pollution would cause Long Island Sound to be polluted as this request is written. Defendant stands on its objections, but is willing to meet and confer further on this Request. |
| 37 | Admit that climate change factors potentially cause pollution at the Terminal.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm | Plaintiff's further revised Request No. 37 does not resolve the issues with the original and revised Request. As written, this Request is not clear if Plaintiff is asking if Defendant is aware that severe weather events are potential sources of pollution or if it is asking something else. This is also so vague and broad a |

4

| | | |
|---|---|---|
| | surge, flooding, tides, or groundwater levels associated with climate change. | statement that it is not clear how it would aid in the resolution of this matter. Defendant stands on its objections, but is willing to meet and confer further on this Request. |
| 49 | Admit that CT DEEP did not communicate to or inform Defendant that it could allow stormwater to seep into the ground at the Terminal, including the ground within the Terminal's secondary containment area. | Plaintiff's revised Request No. 49 does not resolve the issues with the original Request, and is simply a restatement of the prior, defective request. Defendant stands on its prior objections. Should Plaintiff offer an actual revision, Defendant will consider it. |
| 54(a) | Admit that Defendant is aware of industry and/or governmental publications discussing the impacts of climate change factors on coastal communities.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. | Plaintiff's further revised Request No. 54(a) does not resolve the issues with the original or previously revised Request, as it is still irrelevant, compound and overly broad. Further Revised Request No. 54(a) is also an improper attempt to serve an additional RFA. Defendant stands on its prior objections, as augmented and refined herein. |
| 54(b) | Admit that Defendant is aware of industry and/or governmental publications discussing the impacts of climate change factors on coastal infrastructure.<br><br>The term "climate change factors" means projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change. | Plaintiff's further revised Request No. 54(b) does not resolve the issues with the original or previously revised Request, as it is still irrelevant, compound and overly broad. Further Revised Request No. 54(b) is also an improper attempt to serve an additional RFA. Defendant stands on its prior objections, as augmented and refined herein. |
| 56(a) | Admit that Defendant could take steps to modify the Terminal to withstand the impacts of climate change.<br><br>The term "climate change" means change in the state of the climate that can be identified by changes in the mean, extremes, and/or the variability of its properties and that persist for an extended period, typically decades or longer. | Plaintiff's further revised Request No. 56(a) does not resolve the issues with the original or previously revised Request, as it is still overly broad. As worded, it seemingly asks Pike to admit that it is possible to "take steps to modify the Terminal to withstand the impacts of climate change," which calls for speculation and is not relevant to CLF's Clean Water Act claim. Further, whether something could possibly be done is not a standard for judging compliance with the General Permit. Further Revised Request No. 56(a) is also an improper attempt to serve an additional RFA. Defendant stands on its prior objections, as augmented and refined herein. |

| | | |
|---|---|---|
| 56(b) | Admit that Defendant knows that other coastal fuel storage facilities have been modified to withstand the impacts of climate change.<br><br>The term "climate change" means change in the state of the climate that can be identified by changes in the mean, extremes, and/or the variability of its properties and that persist for an extended period, typically decades or longer. | Plaintiff's further revised Request No. 56(b) does not resolve the issues with the original or previously revised Request, as it is still irrelevant and overly broad. Pike's potential knowledge "that other coastal fuel storage facilities have been modified to withstand the impacts of climate change" has no bearing on CLF's Clean Water Act claims. This request, as written, also seeks information about Pike's current knowledge about whether other coastal fuel storage facilities have been modified. Pike has not owned the Terminal since April 2024. Its current knowledge is not relevant. Further Revised Request No. 56(b) is also an improper attempt to serve an additional RFA. Defendant stands on its prior objections, as augmented and refined herein. |

11. The parties respectfully request that the Court review Pike's responses and objections to RFA Nos. 1, 4, 12, 21, 22, 27, 28, 33, 37, 49, 54 and 56 and make a determination as to whether Pike must amend any of its responses and objections forthwith.

Dated: September 29, 2025

CONSERVATION LAW FOUNDATION, INC.,

By: /s/ *Ana McMonigle*
    Ana McMonigle (ct31370)
    Conservation Law Foundation, Inc.
    195 Church Street
    Mezzanine Level, Suite B
    New Haven, CT 06510
    Tel: (203) 298-7692
    E-mail: amcmonigle@clf.org

    Ameya Gehi (ct31327)
    Conservation Law Foundation, Inc.
    62 Summer Street

Respectfully submitted,

PIKE FUELS LIMITED PARTNERSHIP

By: /s/ *John M. Doroghazi*
    John M. Doroghazi (ct28033)
    WIGGIN AND DANA LLP
    One Century Tower
    265 Church Street
    New Haven, CT 06510
    (203) 498-4421
    jdoroghazi@wiggin.com

Boston, MA 02110
Tel: (617) 850-1795
E-mail: agehi@clf.org

Christopher M. Kilian (ct31122)
Kenneth J. Rumelt (phv207130)*
Conservation Law Foundation, Inc.
15 East State Street, Suite 4
Montpelier, VT 05602
Tel: (802) 622-3020
Tel: (802) 223-5992
E-mail: ckilian@clf.org
E-mail: krumelt@clf.org

James Crowley (ct31319)
Conservation Law Foundation, Inc.
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
Tel: (401) 228-1905
Email: jcrowley@clf.org

Chance Raymond (ct31311)
Chance the Lawyer, LLC
650 Poydras Street
Suite 1400 PMB #2574
New Orleans, LA 70130
Tel: (832) 671-6381
E-mail: chancethelawyer@gmail.com

*Admitted as Visiting Attorney