# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> PIKE FUELS LIMITED PARTNERSHIP, <br><br> Defendant. | No. 3:21-cv-00932-SVN |

**PIKE FUELS LIMITED PARTNERSHIP'S RESPONSES TO PLAINTIFF
CONSERVATION LAW FOUNDATION, INC.'S
<u>FURTHER REVISED FIRST SET OF REQUESTS FOR ADMISSION</u>**

Defendant Pike Fuels Limited Partnership ("Pike") hereby provides responses to Plaintiff Conservation Law Foundation, Inc.'s ("CLF") further revised first set of requests for admission ("Requests"), served as an attachment to CLF's September 4, 2025 letter to Pike. For brevity and to avoid repetition, Pike has not repeated each Request or all of its general and specific objections. Pike's responses incorporate the General Objections and specific objections previously lodged in its initial responses to the Requests, as served on May 30, 2025.

**REQUESTS FOR ADMISSION**

<u>**REQUEST NO. 1**</u>

Admit that discharges from storm surge are non-stormwater discharges under the General Permit.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects that the terms "non-stormwater" and "discharge" are vague and ambiguous, as they can be a term of art, can be used in a non-technical manner, and/or as a defined term under certain laws. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 1: Admit that Pike manages or treats discharges from storm surge as non-stormwater discharges under the General Permit.*

*FURTHER REVISED REQUEST NO. 1: Admit that Defendant does not manage or treat discharges from storm surge as stormwater discharges under the General Permit.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 1: Defendant objects that this Request still calls for a legal conclusion. Specifically, it is predicated on making the legal determination of whether storm surge is or is not a stormwater discharge under the General Permit.*

### REQUEST NO. 4

Admit that discharges from storm surge are not authorized by an individual or other general

permit in the State of Connecticut.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at \*2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as vague and ambiguous because the terms "discharges" and "storm surge" are subject to various interpretations and CLF failed to define the terms. Pike further objects because it is unclear to what "individual" or "other general permit in the State of Connecticut" the Request may be referring. As drafted, the Request also inappropriately calls for expert testimony about what may or may not be authorized by any type of "permit in the State of Connecticut," including beyond the stormwater permitting scheme that is the subject of CLF's allegations in this litigation. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*FURTHER REVISED REQUEST NO. 4: Admit that the term "stormwater" in any of Defendant's permits issued by CT DEEP for the Terminal does not include storm surge.*

*REPSONSE TO REVISED REQUEST NO. 4: Defendant objects that this Request still calls for a legal conclusion. Specifically, it is predicated on making the legal determination of whether storm surge is or is not a stormwater discharge under the General Permit.*

### REQUEST NO. 8

Admit that Defendant did not design the Terminal to minimize the risk of oil and chemical spills

resulting from climate change factors, including flooding, sea level rise, increased frequency and

severity of storms, increased precipitation, severe weather, and storm surge.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at \*2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike**

2

**further objects to this Request as compound. Pike further objects because, as worded, the Request implies that Pike had a duty to "design the Terminal to minimize the risk of oil and chemical spills resulting from climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge," which is not a duty that exists. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. Pike further objects to this Request as vague, ambiguous, and confusing and thus Pike does not have sufficient information to admit or deny the Request. Pike further objects to the extent it is not the entity that designed the Terminal, and it is unclear whether the term "design" is meant to refer to the original construction of the Terminal, which took place decades ago, or some other time between the building of the Terminal and Pike's sale of the Terminal in 2024.**

*FURTHER REVISED REQUEST NO. 8: Admit that Defendant did not design the Terminal to minimize the risk of oil and chemical spills resulting from climate change factors.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 8: Subject to the General Objections and foregoing objections, denied.*

## REQUEST NO. 10

Admit that the information submitted in or with the SWPPP was not gathered and evaluated

utilizing a system designed to assure that qualified personnel considered the reasonably

foreseeable risks of pollutant discharges associated with climate change.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at \*2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as vague and ambiguous because the term "control measures" and phrase "minimize the risk of pollutant discharges from sea level rise" are subject to various interpretations and CLF failed to define the term and phrase. Pike further objects to this Request as compound. Pike further objects, because, as worded, the Request implies that Pike had various duties under the General Permit that did not exist. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*FURTHER REVISED REQUEST NO. 10: Admit that Defendant did not gather and evaluate information submitted in the SWPPP using a process that would ensure that individuals certifying the SWPPP considered the reasonably foreseeable risks of pollutant discharges associated with climate change.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 10: Subject to the General Objections and foregoing objections, denied.*

3

**REQUEST NO. 11**

Admit that Defendant knew that there was a risk of a loss of primary containment at the Terminal due to climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "sea level rise," "severe weather," and "storm surge," and phrases "risk of a loss of primary containment" and "climate change factors" are subject to various interpretations and CLF failed to define the terms and phrases. Pike further objects, because, as worded, the Request implies that Pike had various duties under the General Permit that did not exist. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*FURTHER REVISED REQUEST NO. 11: Admit that Defendant knew that there was a risk of a loss of primary containment at the Terminal due to climate change factors.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 11: Plaintiff's revised Request No. 11 does not resolve the issues with the original Request, as it is still compound. Subject to the General Objections and foregoing objections, Defendant admits that, generally, severe weather and its associated effects is an identified risk at the Terminal. Otherwise, denied.*

**REQUEST NO. 12**

Admit that Defendant's responsible corporate officer did not make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit, including ensuring that qualified personnel properly gathered and evaluated information submitted in or with the SWPPP.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as vague and ambiguous because the phrase "make inquiry" is subject to various interpretations and CLF failed to define the phrase. It is unclear what CLF means by "Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit." Pike does**

4

**not know what "system" CLF is referring to without a definition or further clarification. It is also unclear what CLF believes constitutes "management" of this so-called "system." It is also unclear about what CLF believes Pike's responsible corporate officer was to "make inquiry" with respect to this so-called "system." Pike further objects, because, as worded, the Request implies that Pike's "responsible corporate officer" had a duty to "make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit, including ensuring that qualified personnel properly gathered and evaluated information submitted in or with the SWPPP," which duty did not exist. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*FURTHER REVISED REQUEST NO. 12: Admit that Defendant's responsible corporate officer did not make inquiry of persons who manage Defendant's system for ensuring that all terms and conditions of the General Permit continued to be met for all discharges authorized by the General Permit regarding accounting for climate change factors at the Terminal.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 12: Defendant objects that this further revision, is, in fact, an attempt to ask a new Request for Admission outside the time allowed under the scheduling order. Thus, the new revision is an improper request. The original Request did not seek any information regarding "climate change factors." Further, the new request, as written is vague and ambiguous. Furthermore, Plaintiff's definition of "climate change factors" prohibitively makes the Request compound.*

## REQUEST NO. 14

Admit that the volume of the Terminal's secondary containment area is insufficient under the

terms of the General Permit.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.).**

*REVISED REQUEST NO. 14: Admit that Pike determined, by its own calculations or otherwise, that the Terminal's secondary containment area is insufficient under the terms of the General Permit.*

*FURTHER REVISED REQUEST NO. 14: Admit that Defendant determined, by its own calculations or otherwise, that the volume of the Terminal's secondary containment area is insufficient under the terms of the General Permit.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 14: Subject to the General Objections and foregoing objections, denied.*

**REQUEST NO. 15**

Admit that the Terminal's secondary containment area is permeable.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as vague because the term "permeable" is subject to various interpretations and CLF failed to define the term. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 15: Admit that Pike determined, by its own calculations or otherwise, that the Terminal's secondary containment area was not impermeable as required by the General Permit § 5(b)(9)(A)(i).*

*RESPONSE TO REVISED REQUEST NO. 15: Subject to the General Objections and foregoing objections, denied.*

**REQUEST NO. 21**

Admit that Defendant did not implement stormwater management or treatment measures

considering the impact of climate change factors, including flooding, sea level rise, increased

frequency and severity of storms, increased precipitation, severe weather, and storm surge, on

the potential of various sources at the Terminal to contribute pollutants to stormwater discharges.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "implement," "climate change factors," "sea level rise," and "storm surge" and the phrase "stormwater management or treatment measures" are subject to various interpretations and CLF failed to define the terms and phrase. Pike further objects, because, as worded, the Request implies that Pike had a duty to "implement stormwater management or treatment measures considering the impact of climate change factors," which duty did not exist. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 21: Admit that Defendant did not consider the impact of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the potential of various sources at*

6

*the Terminal to contribute pollutants to stormwater discharges when implementing stormwater management or treatments measures at the Terminal.*

*FURTHER REVISED REQUEST NO. 21: Admit that Defendant did not consider the impact of climate change factors on the potential of various sources at the Terminal to contribute pollutants to stormwater discharges when implementing stormwater management at the Terminal.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 21: Plaintiff's further revised Request No. 21 does not resolve the issues with the original Request, as it is still compound and still uses a confusing definition of the term "client change factors." Plaintiff's further revised Request No. 21 is simply a restatement of the prior, defective request. Defendant stands on its prior objections. Should Plaintiff offer an actual revision, Defendant will consider it.*

**REQUEST NO. 22**

Admit that it is feasible to consider the impacts of climate change factors, including flooding, sea

level rise, increased frequency and severity of storms, increased precipitation, severe weather, and

storm surge, on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at \*2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "feasible," "consider," "impacts," and "climate change factors" and phrase "diversion of uncontaminated run-on to avoid areas that may contribute pollutants" are subject to various interpretations and CLF failed to define the terms and phrase. The Request is confusing because, as worded, the Request seemingly asks Pike to admit that it is hypothetically possible for any individual to access any publication or publicly available document or the internet, generally, to obtain the specified information, which is not relevant to the claims in this litigation, as Pike is not aware of any standard at issue that calls for determining whether a particular action is "feasible." Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 22: Admit that Defendant considers the impacts of climate change factors, such as such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants.*

*FURTHER REVISED REQUEST NO. 22: Admit that Defendant considers the impacts of climate change factors on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 22: Defendant objects that this Request, as written, is still vague and ambiguous. It is unclear what "uncontaminated run-on"*

7

*means and otherwise does not identify a fact or application of fact that can be clearly admitted or denied. Additionally, Plaintiff's further revised Request No. 22 is also a restatement of the prior, defective revised request.*

**REQUEST NO. 27**

Admit that information Defendant submitted to CT DEEP did not include information relating to the potential impacts of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at \*2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "information," "submitted," "climate change factors," "sea level rise," and "storm surge" are subject to various interpretations and CLF failed to define the terms. Pike further objects, because, as worded, the Request implies that Pike had a duty to "submit[] to CT DEEP" "information relating to the potential impacts of climate change factors," which duty did not exist. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. The Request is confusing because, as worded, the Request seemingly asks Pike to admit that it never provided CT DEEP with information regarding the potential impacts of climate change factors, regardless of whether the information submitted would be relevant to what CLF refers to as "climate change factors," even if not referred to using that term. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 27: Admit that information Defendant submitted to CT DEEP, in its SWPPPs or via another medium or manner, regarding the Terminal did not include information relating to the potential impacts of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal.*

*FURTHER REVISED REQUEST NO. 27: Admit that information Defendant submitted to CT DEEP regarding the Terminal did not include information relating to the impacts of climate change factors on the Terminal.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 27: Plaintiff's further revised Request No. 27 does not resolve the issues with the original. As written, this Request is not clear if Plaintiff is asking if Defendant ever considered any information related to topics like storm surge or precipitation or flooding, if it is asking that Defendant included the term "climate change" in the SWPPP or if it is asking something else. Defendant still objects to this re-written Request, but is happy to meet and confer further on this Request.*

**REQUEST NO. 28**

Admit that Defendant was aware of the potential impacts of climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal when it submitted information to CT DEEP.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike further objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "aware," "information," "submitted," "climate change factors," "sea level rise," and "storm surge" are subject to various interpretations and CLF failed to define the terms. Pike further objects, because, as worded, the Request implies that Pike had a duty to "submit[] to CT DEEP" "information relating to the potential impacts of climate change factors," which duty did not exist. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. The Request is confusing because, as worded, the Request seemingly asks Pike to admit that it never provided CT DEEP with information regarding the potential impacts of climate change factors, regardless of whether the information submitted would be relevant to what CLF refers to as "climate change factors," even if not referred to using that term. Similarly, it is unclear what is being asked about Pike's awareness. For example, is this Request asking if someone has ever thought about "potential climate change factors," or thought about it in the context of submissions to CT DEEP, or some other context? Pike further objects to the Request as vague and ambiguous because, as drafted, CLF has not identified with specificity what it means by the use of the phrase "when it submitted information to CT DEEP." Is CLF asking about a state of awareness at any time when Defendant submitted any information whatsoever to CT DEEP? Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 28: Admit that Defendant was aware of the potential impacts of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, on the Terminal when it submitted information regarding the Terminal to CT DEEP in its SWPPPs or via another medium or manner.*

*FURTHER REVISED REQUEST NO. 28: Admit that Defendant was aware of the potential for the impacts of climate change factors on the Terminal when it submitted information regarding the Terminal to CT DEEP, such as in the SWPPPs or via another medium or manner.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 28: Plaintiff's further revised Request No. 29 does not resolve the issues with the original. "Aware[ness] of the potential for the impacts of climate fact factors" can mean information on these various topics, even if the term "climate change" is not used. As written, this Request is not clear if Plaintiff is asking if Defendant ever knew of any information related to topics like storm surge or precipitation or flooding, if it is asking that Defendant included the term "climate change" in the SWPPP or if it is asking*

*something else. Defendant stands on its objections, but is happy to confer further on this particular request.*

**REQUEST NO. 33**

Admit that Defendant was aware of the potential for climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal to cause pollution to the surface waters of the State of Connecticut.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. <u>Shea v. Sieunarine</u>, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "aware," "climate change factors," "surface waters," "sea level rise," and "storm surge" and phrase "cause pollution" are subject to various interpretations and CLF failed to define the terms and phrase. Pike further objects to the extent the term "surface waters of the State of Connecticut" requires a legal interpretation. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 33: Admit that Defendant was aware of the potential for climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, to impact the Terminal and cause the New Haven Harbor and/or the Long Island Sound to become polluted.*

*FURTHER REVISED REQUEST NO. 33(a): Admit that Defendant was aware of the potential for climate change factors at the Terminal to cause New Haven Harbor to become polluted.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 33(a): Plaintiff's further revised Request No. 33(a) does not resolve the issues with the original and it is unclear what "climate change factors at the Terminal means." The terminal itself is not a source of severe weather and it is not clear what source of pollution would cause New Haven Harbor to be polluted, as this request is written. Defendant stands on its objections, but is willing to meet and confer further on this Request.*

*FURTHER REVISED REQUEST NO. 33(b): Admit that Defendant was aware of the potential for climate change factors at the Terminal to cause Long Island Sound to become polluted.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 33(b): Plaintiff's further revised Request No. 33(b) does not resolve the issues with the original and it is unclear what "climate change factors at the Terminal means." The terminal itself is not a source of severe weather and it is not clear what source of pollution would cause Long Island Sound to be polluted as this request is written. Defendant stands on its objections, but is willing to meet and confer further on this Request.*

**REQUEST NO. 37**

Admit that climate change factors, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, create significant sources or potential sources of pollution at the Terminal.

**RESPONSE: Pike objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "create," "significant," "sources," "climate change factors," "sea level rise," "storm surge," and "potential" are subject to various interpretations and CLF failed to define the terms. As written, the Request is unclear to the extent it fails to explain how the so-called, listed factors could be considered sources of pollution on their own and, even if those so-called listed factors in fact could be considered sources of pollution on their own, CLF has failed to identify under which standard it used to characterize same as "significant." Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 37: Admit that climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, create significant sources or potential sources of pollution at the Terminal if and/or when they occur at the Terminal.*

*FURTHER REVISED REQUEST NO. 37: Admit that climate change factors potentially cause pollution at the Terminal.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 37: Plaintiff's further revised Request No. 37 does not resolve the issues with the original and revised Request. As written, this Request is not clear if Plaintiff is asking if Defendant is aware that severe weather events are potential sources of pollution or if it is asking something else. This is also so vague and broad a statement that it is not clear how it would aid in the resolution of this matter. Defendant stands on its objections, but is willing to meet and confer further on this Request.*

**REQUEST NO. 38**

Admit that Defendant was aware that it was necessary to address significant sources or potential sources of pollution due to climate change, including flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal.

**RESPONSE: Pike objects to this Request as compound. Pike further objects to this Request as vague and ambiguous because the terms "necessary," "address," "significant," "sources," "climate change," "sea level rise," "storm surge," and "potential" are subject to various interpretations and CLF failed to define the terms. Pike further objects, because, as worded, the Request implies that Pike had a duty "to address significant sources or potential sources of pollution due to climate change… at the Terminal" without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. Similarly, it is unclear what is being asked about Pike's awareness. For example,**

11

is this Request asking if someone had an understanding that there was a requirement "to address significant sources or potential sources of pollution due to climate change" based on the General Permit, a statute, a regulation or something else? Is this Request asking Pike to admit that someone supposedly was aware of the need "to address significant sources or potential sources of pollution due to climate change" but failed to do so? Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.

*REVISED REQUEST NO. 38: Admit that Defendant became aware that it must amend its SWPPP to address significant sources or potential sources of pollution due to climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, at the Terminal.*

*FURTHER REVISED REQUEST NO. 38: Admit that Defendant became aware that it must amend its SWPPP to address pollution potentially caused by climate change factors at the Terminal.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 38: Subject to the General Objections and foregoing objections, denied.*

**REQUEST NO. 48**

Admit that stormwater has infiltrated into the ground at the Terminal.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike objects to this Request as vague and ambiguous because the term "infiltrate" is subject to various interpretations and CLF failed to define the term. Pike further objects that this Request is not limited in time or location within the Terminal. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 48: Admit that stormwater has seeped into the ground at the Terminal, including the ground within the Terminal's secondary containment area.*

*RESPONSE TO REVISED REQUEST NO. 48: Subject to the General Objections and foregoing objections, Defendant interprets this Request to mean that sometime between 2011 and 2024, at least one drop of stormwater has come into contact with the ground at the Terminal and entered into the ground at the Terminal within the secondary containment area. Subject to that interpretation, admitted. To the extent Plaintiff is attempting to assert any other meaning of this Request, denied.*

**REQUEST NO. 49**

Admit that Defendant did not receive approval from CT DEEP to infiltrate stormwater into the

ground at the Terminal.

12

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike objects to this Request as vague and ambiguous because the term "infiltrate" is subject to various interpretations and CLF failed to define the term. Pike further objects, because, as worded, the Request implies that Pike had a duty to seek out and "receive approval from CT DEEP to infiltrate stormwater into the ground at the Terminal," which duty did not exist. CLF asks Pike to admit the existence of this duty without citing the source of the alleged duty, which is improper and does not provide Pike the relevant context needed to evaluate the Request. Pike further objects that this Request is not limited in time or location within the Terminal. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 49: Admit that CT DEEP did not communicate to or inform Defendant that it could allow stormwater to seep into the ground at the Terminal, including the ground within the Terminal's secondary containment area.*

*RESPONSE TO REVISED REQUEST NO. 49: Plaintiff's revised Request No. 49 does not resolve the issues with the original Request, and is simply a restatement of the prior, defective request. Defendant stands on its prior objections. Should Plaintiff offer an actual revision, Defendant will consider it.*

**REQUEST NO. 51**

Admit that the Terminal's secondary containment area has been permeable at least from October 1, 2011, to the present.

**RESPONSE: Pike objects to this Request on the ground it calls for a legal conclusion and thus outside the scope of permissible requests for admission. Shea v. Sieunarine, No. 3:21-CV-00673 (JCH), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (Farrish, M.J.). Pike objects to this Request as vague and ambiguous because the term "permeable" is subject to various interpretations and CLF failed to define the term. Pike further objects to this Request to the extent Pike has not had access to the Terminal's secondary containment area at least since the date of the Sale and thus cannot determine its permeability between the date of the Sale and the present. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 51: Admit that stormwater has seeped into the ground in the Terminal's secondary containment area at various points in time during the period of January 1, 2011, through April 2024.*

*RESPONSE TO REVISED REQUEST NO. 51: Defendant objects to the extent this Request is duplicative of Request No. 48. Subject to the General Objections and foregoing objections, Defendant interprets this Request to mean that sometime between 2011 and 2024, at least one drop of stormwater has come into contact with the ground at the Terminal and entered into the ground at the Terminal within the secondary containment area. Subject to that interpretation,*

13

*admitted. To the extent Plaintiff is attempting to assert any other meaning of this Request, denied.*

**REQUEST NO. 53**

Admit that Defendant has been aware of and knows about the scientific consensus that climate

change is occurring and is primarily caused by human activity.

**RESPONSE: Pike objects to this Request as vague and ambiguous because the term "scientific consensus" is subject to various interpretations and CLF failed to define the term. Pike objects to this Request as irrelevant to CLF's claims. Pike's potential awareness or knowledge of "the scientific consensus that climate change is occurring and is primarily caused by human activity" – whatever that phrase is intended to mean – has no bearing on CLF's Clean Water Act claims, which are premised on Pike's alleged failure to comply with the General Permit. The cause of climate change has nothing to do with what actions the General Permit requires or what Pike did or did not actually do. Similarly, it is unclear what is being asked about Pike's awareness or knowledge. For example, is this Request asking if someone was aware of or had knowledge of a "scientific consensus that climate change is occurring and is primarily caused by human activity" and thus had a duty to take certain actions at the Terminal? Is the Request asking if someone was aware of or had knowledge of a "scientific consensus that climate change is occurring and is primarily caused by human activity" and thus had a duty to refrain from taking certain actions at the Terminal? Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 53: Admit that Defendant, such as Defendant's employees involved in preparing and/or approving the SWPPP, has been aware of and knows that climate change is occurring and is primarily caused by human activity.*

*FURTHER REVISED REQUEST NO. 53: Admit that Defendant, such as Defendant's employees involved in preparing and/or approving the SWPPP, has been aware of and knows that climate change is occurring.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 53: Defendant objects to Plaintiff's further revised Request No. 53 as still vague as it is unclear who's awareness and knowledge of climate change Plaintiff is asking because it says "<u>such as</u> Defendant's employees involved in preparing and/or approving the SWPPP." Subject to the General Objections and foregoing objections, Defendant interprets this Request to ask if at least one employee who had a role in the SWPPP process sometime in the last decade was aware of the existence of climate change. Subject to that interpretation, admitted. To the extent Plaintiff is attempting to assert any other meaning of this Request, denied.*

**REQUEST NO. 54**

14

Admit that Defendant has been aware of and knows about reports by organizations, governmental bodies, and oil and gas entities regarding the impacts of climate change, including financial risks.

**RESPONSE: Pike objects to this request as irrelevant to CLF's claims. Pike's potential awareness or knowledge of "reports by organizations, governmental bodies, and oil and gas entities regarding the impacts of climate change, including financial risks" has no bearing on CLF's Clean Water Act claims, which are premised on Pike's alleged failure to comply with the General Permit. Pike further objects that this Request is vague and confusing, as it is generally asking Pike about its knowledge of unidentified reports from various third parties about the general topic of climate change. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 54: Admit that Defendant has been aware of and knows about any publications by any organizations, governmental bodies, or oil and gas entities concerning the impacts of climate change to coastal communities or coastal infrastructure.*

*FURTHER REVISED REQUEST NO. 54: Admit that Defendant has been aware of and knows about any publications by any organizations, governmental bodies, or oil and gas entities concerning the impacts of climate change factors on coastal communities or coastal infrastructure.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 54: Plaintiff's further revised Request No. 54 does not resolve the issues with the original and revised Request, as it is still compound and is also so broad as to be unanswerable. It is unduly burdensome to ask Defendant to determine if someone at its company was aware, over a decade, of one publication from any organization, any governmental body or any oil and gas company regarding whether the broad category of climate change factors had any impact on coastal communities or coastal infrastructure. In essence, this request asks Defendant to admit whether any organization, any governmental body or any oil and gas company said that climate change might effect a coastal community or coastal infrastructure anywhere in the world. Plaintiff's further revised Request No. 54 is simply a restatement of the prior, defective request. Defendant stands on its prior objections. Should Plaintiff offer an actual revision, Defendant will consider it.*

## REQUEST NO. 56

Admit that Defendant has known about steps that oil and gas entities have taken to adapt and prepare their infrastructure to withstand the impacts of climate change.

**RESPONSE: Pike objects to this request as irrelevant to CLF's claims. Pike's potential knowledge of "steps that oil and gas entities have taken to adapt and prepare their infrastructure to withstand the impacts of climate change" has no bearing on CLF's Clean Water Act claims, which are premised on Pike's alleged failure to comply with the General Permit. Pike further objects that this Request is vague, confusing, and so general that is impossible to answer. As written, it asks Pike to identify whether it knows if unidentified third parties have engaged in undefined conduct related to their infrastructure due to third-**

15

parties' general concerns about climate change. Pike is not privy to the reasoning or thinking of unidentified and unspecified third parties. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.

*FURTHER REVISED REQUEST NO. 56: Admit that Defendant has known about steps taken by oil and gas entities that own and/or operate, or have owned and/or operated, coastal bulk fuel storage facilities to adapt and prepare their infrastructure to withstand the impacts of climate change.*

*RESPONSE TO FURTHER REVISED REQUEST NO. 56: Plaintiff's further revised Request No. 54 does not resolve the issues with the original and revised Request, as it is still compound and still is so broad as to be meaningless. Plaintiff's further revised Request No. 54 is simply a restatement of the prior, defective request. It is asking, in essence, whether Defendant knows if any oil or gas company anywhere in the world has ever made any changes to a bulk fuel storage facility to "withstand the impacts" of climate change. Thus, this question is asking about information about oil platforms in the North Sea, the Southern Coastal United States and everywhere between. Defendant stands on its prior objections. Should Plaintiff offer an actual revision, Defendant will consider it.*

## REQUEST NO. 57

Admit that Defendant has employed individuals with subject matter expertise regarding the impacts

of climate change generally and at coastal bulk fuel storage facilities, such as the Terminal.

**RESPONSE: Pike objects to this request as irrelevant to CLF's claims. That Pike may have "employed individuals with subject matter expertise regarding the impacts of climate change generally and at coastal bulk fuel storage facilities, such as the Terminal" has no bearing on CLF's Clean Water Act claims, which are premised on Pike's alleged failure to comply with the General Permit. Pike further objects to this Request as vague and ambiguous because the terms "subject matter expertise and "climate change" are subject to various interpretations and CLF failed to define the terms. Pike objects that this Request, as written, is vague and ambiguous. It is unclear what is meant by "subject matter expertise" or how Pike is to determine if a person is or is not a subject matter expert. It is also unclear whether this Request is asking if Pike employs experts on climate change, costal bulk fuel storage facilities, or climate change as it relates to bulk fuel storage facilities. Based on the foregoing objections, Pike does not have sufficient information to admit or deny the Request.**

*REVISED REQUEST NO. 57: Admit that Defendant has employed individuals with expertise regarding the impact of climate change factors, such as flooding, sea level rise, increased frequency and severity of storms, increased precipitation, severe weather, and storm surge, generally and at coastal bulk fuel storage facilities, such as the Terminal.*

*FURTHER REVISED REQUEST NO. 57: Admit that Defendant has employed individuals with expertise regarding the impacts of climate change factors at coastal bulk fuel storage facilities, such as the Terminal.*

16

***RESPONSE TO FURTHER REVISED REQUEST NO. 57:*** *Subject to the General Objections, Defendant interprets the phrase "employed individuals" to mean a person with a direct employment relationship with Pike as opposed to an independent consultant. Subject to that interpretation, denied.*

Dated: September 9, 2025

*/s/ John M. Doroghazi*
John M. Doroghazi (ct28033)
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, CT 06510
T: 203.498.4421
F: 203.782.2889
jdoroghazi@wiggin.com

*Attorneys for Defendant
Pike Fuels Limited Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 9, 2025, a copy of the foregoing was sent by e-mail upon the below counsel of record as follows:

Allan Kanner
Kanner and Whiteley, L.L.C.
701 Camp St.
New Orleans, LA 70130
a.kanner@kanner-law.com

Chance Raymond
Chance the Lawyer, LLC
650 Poydras St., Suite 1400
PMB 2574
New Orleans, LA 70130
chancethelawyer@gmail.com

Kenneth J. Rumelt
Christopher Kilian
Conservation Law Foundation
15 E. State St., Suite 4
Montpelier, VT 05602
krumelt@clf.org
ckilian@clf.org

James Crowley
Conservation Law Foundation
235 Promenade St., Suite 560
Providence, RI 02908
jcrowley@clf.org

Ameya Gehi
Conservation Law Foundation
62 Summer St.
Boston, MA 02131
agehi@clf.org

Ana McMonigle
Conservation Law Foundation
195 Church St., Suite B
New Haven, CT 06510
amcmonigle@clf.org

/s/ *John M. Doroghazi*
John M. Doroghazi