UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., : | |
| : | Case No.: 3:21-cv-00932-SVN |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| PIKE FUELS LIMITED PARTNERSHIP, : | |
| : | |
| Defendant. : | October 6, 2025 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL EXPERT MATERIALS AND ADDITIONAL EXPERT TESTIMONY

Defendant Pike Fuels Limited Partnership ("Pike") respectfully asks the Court to compel the production of expert witness reports and deposition transcripts of four expert witnesses from the matter captioned *CLF v. Shell Oil Co.*, No. 3:21-cv-00933-VDO (D. Conn.) (the "Shell Litigation"), as Plaintiff Conservation Law Foundation, Inc. ("CLF") has identified these individuals as testifying experts in both this case and the Shell Litigation. Pike further requests that it be allowed to take a second deposition of each of these experts, as CLF not only refused to produce the Shell Litigation transcripts and expert reports but also instructed these experts at their depositions in this matter not to answer *any* questions about their opinions in the Shell Litigation.

There is no good-faith basis for CLF's conduct. Prior testimony and expert reports regarding the same legal issues in a case involving another oil storage terminal only minutes away from the terminal at issue in this case is clearly fair game for discovery and cross-examination. Indeed, they are materials on which the experts undoubtedly relied, and they are core materials for Pike to use to potentially attack the opinions of the witnesses in this case. After first making a nonsensical objection that the expert reports and testimony in the Shell Litigation were not relevant and therefore need not be produced, CLF switched gears and said that its stonewalling was merely

1

to protect Shell's confidential information. The reality is that CLF simply did not want its experts exposed to cross-examination on their opinions and testimony about the very matters before the Court in this case. Common sense dictates that large portions of the expert testimony and expert reports in the Shell Litigation do not discuss confidential topics. And, to the extent that they do, there was and is a simple way to produce these materials: with Shell's permission or with an agreed-to order from this Court. The Court should put an end to this nonsense and grant Pike's motion to compel.

## I.   Background

As the Court is aware, CLF has alleged in two cases that bulk fuel storage terminals located near the New Haven Harbor are not compliant with the Clean Water Act ("CWA") and Connecticut's Stormwater General Permit ("General Permit") for various reasons, including most notably that the defendants in these cases did not adequately consider the risks of climate change. Those cases are the Shell Litigation and this matter. A simple comparison of the complaints, as well as this Court's prior knowledge of the two cases, demonstrates that they overlap in substantial substantive ways.

CLF designated Wendi Goldsmith, Robert Nairn, Mathew Barlow, and James O'Donnell as expert witnesses in this case. (Doroghazi Decl. ¶ 3). It is Pike's further understanding from speaking with counsel for CLF and Shell, and from the depositions of these witnesses, that they were disclosed, submitted detailed expert reports, and were deposed in the Shell Litigation. (*Id.*). The experts were disclosed and deposed in the Shell Litigation *before* their depositions here. (*Id.* ¶ 4).

As soon as the four experts were disclosed in this case, Pike requested the expert reports and testimony from the Shell Litigation. It did so in two ways. First, it served a set of document

requests on CLF. (*Id.* ¶ 5, Ex. A). CLF never responded to those requests. (*Id.* ¶ 6). Thus, second, with expert deposition deadlines fast-approaching, Pike issued subpoenas that accompanied the deposition notices to the experts for relevant materials, including (and especially) their reports and testimony in the Shell Litigation. (*Id.* ¶ 7, Ex. B). In response, CLF called Pike asking it to withdraw the subpoenas and proceed just with the document requests. (*Id.* ¶ 8). When Pike refused, citing the high importance of receiving the requested information before the depositions, (*id.; id.* ¶ 10, Ex. D at 4-5), CLF lodged a litany of objections to the subpoenas, including the shocking claim that expert information from the Shell Litigation was not relevant in this case. (*Id.* ¶ 9, Ex. C). CLF claimed that "separate matters that concern different bulk fuel storage terminals, defendants, and fact patterns," and that "any expert opinion, written or oral, that [an expert] has provided in those matters concerns those terminals and those defendants, not the terminal at issue in this case or Pike." (*See, e.g.*, *id.* (9/5/25 Objections to Goldsmith Subpoena) at 6.).[1] Pike's counsel responded to CLF's counsel by email, explaining why that position was inconsistent with every position that CLF had taken throughout the case, including in seeking discovery about other terminals and in its fundamental position on the meaning of the General Permit's best industry practices language. (*Id.* ¶ 10, Ex. D at 3-4).

Pike further attempted to reason with CLF regarding its other main objection, which was based on the protective order in the Shell Litigation. CLF claimed it could not produce the entirety of its own experts' reports or the deposition testimony of its overlapping experts in the Shell Litigation because "they reference and discuss discovery materials produced and marked

---

[1] CLF lodged that objection despite the fact that it has taken the position throughout this litigation (and in the Shell Litigation) that information about Pike's and Shell's other terminals ***was relevant*** to CLF's case. *See* ECF No. 156 (CLF's motion to compel arguing that information about other terminals is relevant to CLF's CWA claims).

3

confidential by the parties to that case." (*Id.* at 3). Pike immediately responded that it was "not asking for information that would violate the protective order." (*Id.* at 2). Rather, Pike was asking for the reports' "vast amounts of information not referring to or citing confidential documents." (*Id.*). CLF still refused to produce any of the information.[2]

Then, only ***hours before each expert deposition***, CLF served brand-new subpoena objections, noticeably removing its original objection that the Shell Litigation expert reports and testimony were not relevant to this case.[3] CLF went full-bore in relying on the Shell Litigation protective order. (*Id.* ¶ 11, Ex. E). It staked out its hardline position as follows: "CLF and our experts object to your subpoena request for the Shell CT expert reports and deposition transcripts on the grounds that it exceeds the requirements of Rule 26(a)(2)(B), seeks confidential or protected information, and is unduly burdensome. Regarding our claim that the request seeks confidential or protected information, CLF maintains that it would be a violation of the Standing Protective Order in the Shell CT case to produce the materials to Pike." (*Id.* ¶ 10, Ex. D at 1-2). Pike responded immediately with its position that CLF's position was "unacceptable" and that it would seek to compel the refused expert materials. (*Id.* at 1). It also immediately responded with potential ways

---

[2] This type of pre-deposition obstruction was part of a pattern by CLF. Leading into expert depositions, CLF prevented meaningful examination in other ways. For Dr. Goldsmith's deposition, CLF did not produce a CV, including a list of Dr. Goldsmith's publications, until only ***five business days before her deposition***. For Dr. Nairn, CLF disclosed a "corrected report" that ballooned his list of considered materials by over 200 additional documents only ***three business days before the deposition***. (Doroghazi Decl. ¶ 12, Ex. F at 1); *see* Fed. R. Civ. P. 26(a)(2)(B) (requiring a written report to include "the witness's qualifications, ***including a list of all publications authored in the previous 10 years***") (emphasis added). For another one of CLF's experts, who is not subject to this motion, Dr. Robert Roseen, CLF did not produce a CV, including a list of Dr. Roseen's publications, until ***less than two business days before the deposition***.

[3] For example, Drs. Nairn and Goldsmith's depositions were to begin at 9AM on September 16, 2025. CLF served Dr. Nairn's ***initial*** responses and objections and Dr. Goldsmith's revised responses and objections on Pike at 10:18PM the night before. CLF served Dr. O'Donnell's revised responses and objections on Pike ***18 minutes*** before the start of Dr. O'Donnell's deposition.

4

that the materials could be produced in a manner that would protect confidentiality. (*Id.*). (proposing ways to alleviate the confidentiality concerns, in that "(1) Pike may only share such documents with its outside counsel and experts; and (2) that the use of the documents in our case will be pursuant to the protective order (which can protect third party information) and will not be seen as a waiver of any confidentiality claims in the Shell case.").

At the depositions of Goldsmith, Nairn, Barlow, and O'Donnell, CLF directed its experts not to answer even the most basic questions about the Shell Litigation, far beyond even any questions about specific proprietary information of Shell that they may have considered. Throughout the depositions, CLF directed their experts to not answer *any* question involving the Shell Litigation, no matter how basic or unrelated to confidential materials that may have been disclosed by Shell in that case. (*Id.* ¶ 13, Ex. G). CLF's behavior at Dr. Nairn's deposition, where CLF again and again directed the expert not to answer even general questions and questions regarding public knowledge of the Shell Litigation, is illustrative, including the following exchange:

> MR. DOROGHAZI: I am not asking you to provide confidential specifics about Shell's New Haven Terminal. I am just asking generally what were the topics on which you gave an expert opinion in that case?
>
> MR. RUMELT: John, I am going to object because the report in that case that Dr. Nairn provided has been designated confidential, and I am concerned that Dr. Nairn may violate the protective order that has been entered in that case if he responds to questions about anything regarding that report.
>
> MR. DOROGHAZI: So are you instructing him not to answer questions about this?
>
> MR. RUMELT: Yes.
> . . .
>
> MR. DOROGHAZI: Q. Okay. And just so I understand, Dr. Nairn, do you have any information about the Shell case that is based on public record or materials that have not been marked confidential?

> MR. RUMELT: I am going to instruct the witness not to answer. The same objection as the others. . . .
>
> MR. DOROGHAZI: So, Ken, just so I'm clear, I literally asked him a question if he has any knowledge of the Shell case based on publicly available information or public filings. That is by its nature not confidential and cannot be confidential.

(*Id.*, Nairn Tr. at 17:10-24, 24:23-25:14; *see also id.* at 18-21 (blanket refusal to allow answers to general questions about prior opinions and even methodology used in the Shell Litigation)). CLF engaged in the same conduct at the depositions of Goldsmith, Barlow, and O'Donnell. (*Id.*, Goldsmith Tr. at 82:1-20, 226:11-21; *id.*, Barlow Tr. at 11:18-12:9, 13:1-21; *id.*, O'Donnell Tr. at 12:4-13:24, 14:19-15:22). The conduct at Barlow's and O'Donnell's depositions was even more confusing, as those experts were largely offering general opinions on the amount of sea level rise in the New Haven Harbor over the next 75 years, how climate change works, and whether humans cause climate change. CLF has never explained how, at minimum, these parts of their opinions rely on or contain confidential information of anyone, let alone the confidential information of Shell.

After depositions concluded, Pike again attempted to negotiate the issue with CLF, culminating in a meet and confer between counsel on Friday, September 26, 2025. (*Id.* ¶ 14). Still, CLF refused to produce any portion of its experts' reports or transcripts. (*Id.* ¶ 15). Instead, CLF's counsel at the meet and confer, Chance Raymond, repeatedly stated that CLF wanted to simply table this issue until after Magistrate Judge Farrish made a ruling in the Shell Litigation on the confidentiality of the expert reports. (*Id.* ¶ 16). He also represented that CLF would be willing to allow for another deposition of its experts and would not be adverse to producing the "full reports, with all exhibits and documents on which they rely" after the court, in the Shell Litigation, determined whether the expert reports, testimony, and accompanying material were confidential. (*Id.* ¶ 17). Undersigned counsel said that waiting for resolution in that matter would prejudice Pike

6

and that there was no reason to wait when the documents could simply be produced with confidentiality protections. (*Id.* ¶ 18).

In a final attempt to rectify the situation without this Court's intervention, Pike's counsel reached out to both Shell's counsel and CLF together requesting a meet and confer on Monday, September 29, 2025, in order to come to a reasonable agreement on producing the requested, highly relevant overlapping expert information. Pike, as it had offered to CLF previously, asked that the parties agree Pike would receive the expert reports and deposition transcripts in the Shell Litigation with Pike agreeing to treat the materials as attorney's and testifying experts' eyes only and with CLF agreeing that it would not weaponize the production against Shell to claim a confidentiality waiver. (*Id.* ¶ 19, Ex. H). Subsequently, Pike spoke with Shell's counsel, and the undersigned understood that Shell had agreed to the following proposal:

> Shell has no objection to the production of the expert deposition transcript[s] and expert reports of O'Donnell, Barlow, Goldsmith, and Nairn from the Shell Litigation to Pike Fuels for use in the CLF v. Pike Fuels case so long as: (1) The reports and transcripts from the Shell Litigation are designated as confidential under the protective order in the Pike case; and (2) There is an agreement by all of the parties involved (i.e. Pike, CLF, and Shell) that the production of the reports and transcripts to Pike for use in the Pike matter is not considered any kind of waiver of Shell's confidentiality arguments in the Shell litigation and CLF will not argue that the production of the reports and transcripts in the Pike litigation is a grounds/reason to oppose Shell's assertion of confidentiality.

(*Id.* ¶¶ 20-21). Pike is willing to follow this proposal. (*Id.* ¶ 22). Pike informed CLF of Shell's position and asked for its position on the proposal. (*Id.* ¶ 23). The undersigned subsequently spoke with Shell's counsel further, who wanted to make clear that their position was on behalf of the specifically named defendants in what Pike has referred to as the "Shell" litigation and further to clarify that the production of the materials to Pike must be understood to not have any effect

7

whatsoever on defendants' ability to assert confidentiality over materials in the Shell Litigation. (*Id.* ¶ 24).

CLF again declined to enter into this type of agreement, refusing to produce anything until Magistrate Judge Farrish made a ruling in the Shell litigation. (*Id.* ¶ 25).

## II. The Court Should Order Production of CLF's Highly Relevant Expert Reports and Testimony from the Shell Litigation and Order Further Depositions of CLF's Experts on the Same.

CLF does not seem to dispute that the opinions of the overlapping experts cover many, if not all of the same topics, as their opinions in this matter. And, indeed, the opinions of CLF's experts about purported "best industry practices," storm frequency, storm surge in various types of storms, permit violations, and the bases for those opinions for a terminal quite literally down the road from Pike's former terminal are extremely relevant here. What CLF's experts relied upon and what they opined in the Shell Litigation have a direct impact on this case, and Pike must be allowed to question CLF's experts on potential inconsistencies between the reports and testimony in both cases. There could be no more relevant expert information than their previous opinions and testimony in a similar case that interprets the same CWA permitting scheme for a bulk storage oil terminal located down the street.[4] Further, it is unclear how these reports and testimony would not

---

[4] CLF's own statement on the record in Pike's deposition of Wendi Goldsmith proves this point. CLF's counsel stated that, if CLF was ordered to produce the prior expert reports from the Shell Litigation, CLF would have the right to amend the reports disclosed to Pike here, ostensibly to resolve any inconsistencies between them. (Doroghazi Decl. ¶ 13, Ex. G (Goldsmith Tr. at 178:14-23) ("MS. McMONIGLE: I'll note for the record if Pike does go through with a valid Motion to Compel, the materials that requested, specifically her expert report and her deposition from the Shell Connecticut case . . . we reserve our right to ask Dr. Goldsmith to supplement her report based on that information.")). This statement shows the obvious relevance of the reports. If they are inconsistent, it goes to their experts' credibility. It also suggests CLF is engaged in gamesmanship. The Court already rejected CLF's attempt to serve rebuttal expert reports, *see* ECF No. 273 ("[t]he Court declines to afford Plaintiff the opportunity for rebuttal expert reports"), and CLF is now trying—by withholding relevant evidence—to create a reason to serve rebuttal reports. CLF should not get through the back door what it did not get through the front.

be part of the materials on which they relied in forming their opinions, as they were prepared first, and, in at least one instance, a report references the knowledge of "Shell" scientists, suggesting that the reports in the Shell Litigation were the foundation for the reports here. (*Id.* ¶ 26).

Federal courts have underscored how important and relevant prior opinions and testimony can be. *See, e.g.*, *Seawolf Tankers Inc. v. Laurel Shipping LLC*, 345 F.R.D. 55, 59 (S.D.N.Y. 2023) ("Prior testimony of an expert can be critical to cross-examining the expert and attacking the expert's opinion. Indeed prior testimony may reveal whether the expert is genuine and properly following some scientific method with integrity or simply in the business of expressing whatever opinion is helpful to the party hiring the expert."); *id.* ("Nothing in the Federal Rules of Civil Procedure prevents this Court from compelling the production of expert-related documents that are relevant and proportional to the needs of the case."); *see also Wagner v. Mr. Bults, Inc.*, 2010 WL 4781623, at *3 (D. Neb. Nov. 16, 2010) ("no [] rule precludes the requested disclosure" of expert reports). Indeed, subpoenas of expert witnesses for information, including prior reports and testimony, is commonplace in this circuit. *Wynne v. Town of E. Hartford*, 2023 WL 1272892, at *2 (D. Conn. Jan. 31, 2023) (denying plaintiff's motion to compel responses to written discovery served on defendant that were truly directed to defendant's expert and noting "[p]laintiff was free to serve a Rule 45 subpoena and request the information that he has requested. Plaintiff could have . . . sought to have him produce documents within his custody and control"); *Lippold v. BVI Emp. LLC*, 2006 WL 8439565, at *1 (E.D.N.Y. Nov. 21, 2006) ("Several courts within this Circuit have held that transcripts in an expert's custody or control that contain testimony concerning any matters about which the expert is to testify must be produced. This prior testimony is relevant for

impeachment purposes.")[5]; *Evanko v. Elec. Sys. Assocs., Inc.*, 1993 WL 14458, at *3 (S.D.N.Y. Jan. 8, 1993) (subpoena served on plaintiff's expert was not objectionable because the limits of discovery allow defendants to obtain "complete responses to the informational requests in a properly drafted set of interrogatories, [or] production . . . of any transcripts of prior testimony by [the doctor] (if in her possession or control)" concerning the subject matter upon which she was opining); *Langley v. Coughlin*, 1989 WL 436675, at *1 (S.D.N.Y. June 19, 1989) (expert's prior testimony on same topics deemed highly relevant such that "plaintiffs are directed to obtain from him and provide to defendants copies of any transcripts in his custody or control that contain testimony by him concerning any matters about which he is to testify in this case"); *accord Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003).[6]

Under settled law and expert discovery rules, CLF's initial objection that their experts' Shell Litigation materials are irrelevant was clearly erroneous. Though CLF withdrew that objection just before depositions, it still refuses to produce its experts' materials citing the protective order in the Shell Litigation. But that protective order is being similarly misused by CLF, and while CLF blames Shell for purportedly tying its hands, CLF has made no attempt that Pike is aware of to reach any kind of obvious and reasonable compromise to resolve the issue here.

The Shell Litigation protective order is not the blanket shield in this case that CLF has claimed. Indeed, if that were so, every case could have a protective order in place that prevented disclosure of clearly relevant documents and information in other similar cases, even if parameters are put in place to protect information. And it appears that CLF is trying to use the refusal to

---

[5] Here, the experts had copies of their reports and transcripts in their possession, custody and control. (*See, e.g.*, Doroghazi Decl. ¶ 13, Ex. G, Nairn Tr. at 16:21-17:4; *id.*, Barlow Tr. at 12:11-25; *id.*, O'Donnell Tr. at 15:24-16:12).

[6] Even if document requests on a party was the proper method for seeking these documents, Pike did that as well.

produce relevant information here to get some kind of admission from the Shell defendants that the information about its terminal(s), to the extent that it is discussed in the reports or testimony, is not confidential. That kind of gamesmanship is particularly troubling with an organization like CLF, which files CWA citizen suits around the country, utilizes the same experts in those cases, and promotes to the public any information it learns through the discovery process that it can convince a court to treat as non-confidential.

Further, it is common sense that the Shell Litigation protective order cannot be interpreted to apply to every word of the experts' reports and their testimony. The protective order states that parties may designate as "confidential" "information, documents, or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy." Shell Litigation, ECF No. 7, ¶ 3. And it further cautions that "[t]he parties will use reasonable care to avoid designating as confidential documents or information that does not need to be designated as such." *Id.* ¶ 11. Yet, even if Shell marked the entirety of the expert transcripts and reports "confidential," the protective order allows CLF to have petitioned Shell to adjust the designation in light of Pike's imminent requests as to clearly non-confidential materials. *Id.* ¶ 12 ("A party may submit a request in writing to the party who produced Designated Material that the designation be modified or withdrawn."). For example, Dr. Nairn's testimony about the general methodology he uses to model waves, what his experience is in certifying SWPPPs, or his experience in advising bulk oil fuel terminals could not be confidential. Similarly, Dr. Goldsmith's testimony about how she believes various terms of the General Permit are interpreted and applied generally clearly would not be confidential. Yet, CLF refuses to produce even that kind of information.

11

Instead, CLF simply ignored Pike's several attempts to reasonably avoid any concerns about the Shell Litigation protective order. (Doroghazi Decl. ¶¶ 27-28). First, Pike offered that CLF, at least in the first instance, not send any information that might violate that order—*i.e.*, CLF could have redacted specific citations to Shell-specific confidential documents and information. (*See id.* ¶ 10, Ex. D at 2). For instance, if Dr. Goldsmith opined or testified that she reviewed Document X, produced and marked confidential by Shell, and that Document X said something that she found questionable, then CLF could have redacted that portion of the report in the first instance. Then, Pike would have had the benefit of the other portions of the report for the depositions and could depose CLF's experts on public materials considered (or not), the methodologies employed by the experts in both cases, what purported "best industry practices" were not followed, and the list goes on. It would also have enough context to determine whether the confidentiality arguments had merit or whether Pike needed to seek to see any of the confidential information to examine the witness fully. Instead, CLF took the untenable position again that it need not provide anything from the Shell Litigation.

Second, Pike offered to have the expert reports and testimony be treated as attorney's eyes only and experts' eyes only under the protective order in this case, and even to seek a joint order from Magistrate Judge Farrish confirming the same. CLF refused this offer, too.

Third, Pike further asked that CLF reach out to Shell's counsel to discuss Pike's request and the ability to mark anything produced to Pike as attorney's and testifying experts' eyes only—CLF again ignored Pike's request and did none of that prior to expert depositions. Only at the September 26 meet and confer did CLF express a willingness to speak with Shell's counsel, days after expert depositions had concluded. However, to Pike's knowledge, CLF has not worked with

Shell in any meaningful way to ensure that the documents can be produced to Pike in a manner that will not prejudice any position that Shell or CLF takes in the Shell case about confidentiality.

Importantly, CLF has been talking out of both sides of its mouth on this issue, too, making its hardline position even more incredulous. Just days ago, CLF itself filed an ***opposition*** to Shell Oil's motion to seal expert report excerpts due to the standing protective order in that case. *See* Shell Litigation, ECF No. 702. In its opposition brief there, CLF argues that "upon scrutiny of the [expert report] excerpts, there simply is no reference to or information from confidentially designated documents that would cause any competitive harm to Defendants. Even if there were a potential for minimal exposure of some information not generally public, below CLF shows that the information is already public in other documents filed in this litigation, and that Defendants did not support their claim with any specificity and therefore Defendants have not met their burden to supply evidence for the Court's particularized findings." *Id.* at 3. Thus, even CLF believes, despite its unbending, obstructive position in this case, that the entirety of expert reports cannot be marked confidential and kept away from other parties.[7]

Indeed, as detailed above, Pike stated, to try and resolve the matter, to CLF that it would accept, as a first pass, the report and transcript redacted for confidential Shell-specific documents and information; CLF could thus have redacted information in its experts' reports that it was concerned might be specific to Shell and thus potentially implicate the standing protective order in that case. CLF refused to do even that. Yet, it now argues in the Shell Litigation that that method

---

[7] While Pike cannot independently assess whether CLF's statement in its recent Shell Litigation brief is correct or not, it betrays CLF's true motives here. CLF clearly does not want to agree to any production of the experts' reports or testimony under a confidentiality provision of any kind because they want to make public use of their expert reports against Shell. Pike can only speculate as to why making the expert reports public would be so important to CLF in the context of this litigation and the Shell Litigation, but CLF's actions certainly suggest ulterior motives. And those ulterior motives are prejudicing Pike's defense of this case.

is the correct way to handle production of expert reports. CLF's two-faced approach is astounding, and its position in the Shell Litigation now fully undermines its flat refusal to produce *anything* related to the Shell Litigation in this case.

That said, Pike is entitled to the entire reports and the entire transcripts. And the Court can easily ensure that the interests of Pike and the Shell defendants are protected. It can simply order that Pike treats the transcripts and expert reports as attorney's eyes and experts' eyes only under the protective order and that the production of these documents does not amount to any waiver of confidentiality by the Shell defendants and that it has no impact on the dispute currently before Judge Farrish about whether the documents and transcripts must remain confidential. Indeed, Pike proposed as much to CLF several times, and it is Pike's understanding that the Shell defendants agree that this type of approach is acceptable. It is only CLF that is standing in the way.

### III.  Conclusion

For the foregoing reasons, the Court should compel CLF to produce its highly relevant expert reports and testimony from the Shell Litigation, and allow Pike to take second depositions of all four overlapping experts for a period of three hours each.

Dated: October 6, 2025

Respectfully submitted,

PIKE FUELS LIMITED PARTNERSHIP

By: /s/ *John M. Doroghazi*
John M. Doroghazi (ct28033)
Joshua N. Taylor (ct29720)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
T: 203.498.4421
F: 203.782.2889
jdoroghazi@wiggin.com
jtaylor@wiggin.com