# EXHIBIT G

Robert Nairn

Page 1

1                    UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF CONNECTICUT

3

4           --------------------------

5           CONSERVATION LAW FOUNDATION,)

6           INC.,                      )

7                        Plaintiff,  )

8                   v.                 )

9                                      ) Civil Action No.

10          PIKE FUELS LIMITED         ) 3:21-cv-00932-SVN

11          PARTNERSHIP,               )

12                       Defendant.  )

13          ---------------------------)

14

15

16

17          --- This is the DEPOSITION of ROBERT NAIRN Ph.D.,

18          held at the offices of McMillan LLP, located at 181

19          Bay Street, Suite 4400, Toronto, Ontario, on the

20          16th day of September, 2025.

21

22

23                         --------

24          Reported By:  Deana Santedicola, CSR (Ont.), RPR,

25                        CRR

Robert Nairn

Page 16

```
 1                    A.   Page 47 to 53.
 2                    Q.   And when you say that, are those
 3         the dotted lines that are going towards the
 4         terminal?  Is that what those routes are?
 5                    A.   Yes, the black dash lines, as I
 6         said earlier.
 7                    Q.   Thank you.
 8                    Are you aware of a lawsuit between
 9         Conservation Law Foundation and Shell, the oil
10         company?
11                    A.   Yes.
12                    Q.   Have you offered an expert opinion
13         in that case?
14                    A.   Yes.
15                    Q.   Were you deposed in that case?
16                    A.   Yes.
17                    Q.   Do you have access to your expert
18         opinion in that case?
19                    MR. RUMELT:  Object to form.
20                    BY MR. DOROGHAZI:
21                    Q.   Let me ask it differently.
22                    Do you have a copy of your expert
23         report in your possession, not here, but generally
24         in your possession?
25                    A.   Yes.
```

Robert Nairn

Page 17

1                    Q.    And again, maybe not here today,
2          but do you have in your possession a copy of your
3          deposition transcript from that case?
4                    A.    Yes.
5                    Q.    Does CLF have a copy of your
6          deposition transcript?
7                    A.    I believe so.
8                    Q.    What general topic -- strike that.
9          Let me start over.
10                   I am not asking you to provide
11         confidential specifics about Shell's New Haven
12         Terminal.  I am just asking generally what were the
13         topics on which you gave an expert opinion in that
14         case?
15                   MR. RUMELT:  John, I am going to object
16         because the report in that case that Dr. Nairn
17         provided has been designated confidential, and I am
18         concerned that Dr. Nairn may violate the protective
19         order that has been entered in that case if he
20         responds to questions about anything regarding that
21         report.
22                   MR. DOROGHAZI:  So are you instructing
23         him not to answer questions about this?
24                   MR. RUMELT:  Yes.
25                   MR. DOROGHAZI:  Okay.  Well, we'll make

Robert Nairn

Page 18

1          a record.

2                          Could you read back the last question?

3                          COURT REPORTER:  The last question was:

4                              "Question:  I am not asking you

5                          to provide confidential specifics

6                          about Shell's New Haven Terminal.  I

7                          am just asking generally what were

8                          the topics on which you gave an

9                          expert opinion in that case?"

10                         BY MR. DOROGHAZI:

11                             Q.   Let me ask -- let me start with

12         this, just to make a record.

13                             Was the expert opinion you gave in

14         connection with Shell's Terminal in New Haven,

15         Connecticut?

16                             A.   That was the location.

17                             Q.   And was your opinion about certain

18         features of Shell's Terminal?

19                         MR. RUMELT:  The same objection as

20         before, and I will instruct the witness not to

21         answer.

22                         BY MR. DOROGHAZI:

23                             Q.   Okay, so you instruct him not to

24         answer.

25                             Was that opinion about the adequacy of

Robert Nairn

```
                                                    Page 19
 1           the terminal in the case of certain types of flood
 2           events?
 3                     MR. RUMELT:  The same objection.
 4           Instruct the witness not to answer.
 5                     BY MR. DOROGHAZI:
 6                     Q.   Was it about what would occur at
 7           the Shell Terminal in the case of a 100-year storm?
 8                     MR. RUMELT:  The same objection, the
 9           same instruction.
10                     BY MR. DOROGHAZI:
11                     Q.   A 500-year storm?
12                     MR. RUMELT:  The same objection, the
13           same instruction.
14                     BY MR. DOROGHAZI:
15                     Q.   A 1000-year storm?
16                     MR. RUMELT:  Same objection, same
17           instruction.
18                     BY MR. DOROGHAZI:
19                     Q.   Did you use the expert report that
20           you prepared in the Shell case as a first draft of
21           the expert report in this case?
22                     MR. RUMELT:  The same objection, the
23           same instruction.  Also object to the extent you
24           are seeking information about a draft report.
25                     MR. DOROGHAZI:  Well, just for the
```

Robert Nairn

Page 20

1          record, I think it is fair if in a similar case he

2          used the other report as a starting point for this

3          report because it would go to the facts and

4          circumstances that he considered in preparing his

5          report.

6                    MR. RUMELT:  Okay, my objection stands,

7          as does the instruction not to answer.

8                    BY MR. DOROGHAZI:

9                    Q.   Did your report in the Shell case

10         have to do with the height of the berm around the

11         Shell Terminal?

12                   MR. RUMELT:  The same objection, the

13         same instruction with respect to the protective

14         order.

15                   BY MR. DOROGHAZI:

16                   Q.   Did it have to do with the

17         secondary containment volume at the Shell facility?

18                   MR. RUMELT:  The same objection, the

19         same instruction.

20                   BY MR. DOROGHAZI:

21                   Q.   On the ingress and egress routes

22         into the terminal?

23                   MR. RUMELT:  The same objection, the

24         same instruction.

25                   BY MR. DOROGHAZI:

Robert Nairn

                                      Page 21

1            Q.   Did it have to do with any wave

2      modelling or climate change modelling?

3            MR. RUMELT:  The same objection, the

4      same instruction.

5            MR. DOROGHAZI:  Can you just actually

6      articulate for the record how whether it talked

7      about wave modelling or climate change is

8      confidential and would be a violation of the

9      protective order to identify that?  I guess can you

10     just explain to me what the confidential

11     information is that you are claiming?

12           MR. RUMELT:  John, as you know, the

13     report -- or there is materials that have been

14     provided in that case that are subject to a

15     protective order, and those are not designations

16     that Conservation Law Foundation has made.

17           And therefore, because the report

18     references information that the Defendants in that

19     case have designated as confidential, the report is

20     designated as confidential; and therefore, in order

21     to avoid having Dr. Nairn violate the protective

22     order in that case, I am instructing him not to

23     answer.

24           BY MR. DOROGHAZI:

25           Q.   Dr. Nairn, have you reviewed the

Robert Nairn

Page 24

1          how about this, just so I don't have to be on you

2          about speaking objections.  If you could just say

3          at the start that you are going to tell him not to

4          answer, then I'll let you say whatever you want.

5                    MR. RUMELT:  Okay, so I am instructing

6          him not to answer, and the objection is based on

7          questions regarding a report that has been

8          designated confidential.

9                    BY MR. DOROGHAZI:

10                   Q.   That wasn't my question.  My

11         question was if you gave -- strike that.

12                   My question was if you provided

13         services to CLF that were in addition to and not

14         part of your expert report?

15                   MR. RUMELT:  Objection.  You are trying

16         to get at information regarding work that Dr. Nairn

17         did in a separate case, including information that

18         he may have performed in a consulting capacity.

19                   MR. DOROGHAZI:  Are you instructing him

20         not to answer that question?

21                   MR. RUMELT:  Yes, I am.

22                   BY MR. DOROGHAZI:

23                   Q.   Okay.  And just so I understand,

24         Dr. Nairn, do you have any information about the

25         Shell case that is based on public record or

Robert Nairn

Page 25

1            materials that have not been marked confidential?
2                        MR. RUMELT:  I am going to instruct the
3            witness not to answer.  The same objection as the
4            others.  You are asking questions about --
5                        MR. DOROGHAZI:  I am asking him if he
6            has --
7                        MR. RUMELT:  -- information in the
8            report that has been designated confidential, John.
9                        MR. DOROGHAZI:  So, Ken, just so I'm
10           clear, I literally asked him a question if he has
11           any knowledge of the Shell case based on publicly
12           available information or public filings.  That is
13           by its nature not confidential and cannot be
14           confidential.
15                       MR. RUMELT:  Okay.
16                       MR. DOROGHAZI:  Okay, and we'll just
17           take it up with Magistrate Farrish and we'll
18           probably see you again for a second deposition.
19                       Is there any information that you are
20           willing to let him answer about the Shell case, or
21           is it, in your view, all confidential and not the
22           ability to ask about?
23                       MR. RUMELT:  I can't answer that
24           question because I don't know what questions you
25           are going to ask.  If you ask a question, I will

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF CONNECTICUT
 3
 4
 5
    CONSERVATION LAW          )
 6  FOUNDATION, INC.          )
                              )
 7          Plaintiff(s)      )
                              )
 8       vs-                  )  Case No.
                              )  3:21-cv-00932(SVN)
 9                            )
    PIKE FUELS LIMITED        )
10  PARTNERSHIP               )
                              )
11          Defendant(s)      )
12
13
14
                DEPOSITION OF WENDI GOLDSMITH, Ph.D
15
16             DATE:  September 16, 2025
17                     HELD AT:
18             WIGGIN AND DANA, LLP
                265 Church Street
19            New Haven, Connecticut 06510
20
                      ---
21
22            Dawn C. Mahoney, CSR #142
               BRANDON LEGAL TECH, LLC
23               370 Asylum Street
             Hartford, Connecticut 06103
24
25
```

Wendi Goldsmith

```
1         Q.  Did you submit any affidavits in a case
2    related to an Exxon facility?
3         A.  Yes.
4         Q.  Was that a CLF case?
5         A.  Yes.
6         Q.  Do you recall what you ultimately stated
7    in that affidavit?
8                   MS. McMONIGLE:  Objection.
9                   THE WITNESS:  I haven't --
10                  MS. McMONIGLE:  I'm actually going to
11         direct her not to answer.
12                  THE WITNESS:  I was going to say I
13         don't -- I honestly don't remember the
14         details.
15                  MR. TAYLOR:  Well, if it's an
16         affidavit on the docket, it's a public
17         document.  I think I can ask her if she
18         recalls what she opined about.
19                  THE WITNESS:  To which my answer is I
20         don't.
21                  MR. TAYLOR:  You don't remember
22         That's a fair answer.
23    BY MR. TAYLOR:
24         Q.  Did you submit an affidavit in either of
25    the Shell matters publicly on the docket?
```

1    SWPPPs?

2              MS. McMONIGLE:  Objection.  I'm just

3         going to direct her not to answer to the

4         extent that she would potentially be

5         disclosing confidential information.  It's

6         been marked confidential in other cases,

7         including the Shell case.

8              MR. TAYLOR:  We'll deal with that

9         offline, and we'll obviously leave the

10        deposition open and reserve all rights as to

11        re-deposing on what's in other SWPPPs, pending

12        discussion with the Court.  I'll just put that

13        on the record.

14             MS. McMONIGLE:  I'll note for the

15        record if Pike does go through with a valid

16        Motion to Compel, the materials that

17        requested, specifically her expert report and

18        her deposition from the Shell Connecticut case

19        and the Shell Rhode Island, although we have

20        said she has not submitted anything, any of

21        those materials in that case, we reserve our

22        right to ask Dr. Goldsmith to supplement her

23        report based on that information.  What would

24        have been, I guess, formally subject to the

25        protective order, depending on how the Court

```
1         the proximity of multiple high-volume storage
2         facilities does compound the risk.
3   BY MR. TAYLOR:
4         Q.  What was your assessment of Shell's risk
5   in that case?
6              MS. McMONIGLE:  Objection.  Can you
7         clarify what exactly -- can you be more
8         specific, please?
9              MR. TAYLOR:  Sure.
10  BY MR. TAYLOR:
11        Q.  You were disclosed as an expert in Shell.
12  Shell has close by, their terminal.  What is their
13  risk like compared to Gulf's risk of threat to the
14  community?
15             MS. McMONIGLE:  I'm going to object
16        and ask her not to answer to the extent that
17        she would be disclosing any confidential
18        information that's protected by the standing
19        protective order in that case that's contained
20        in her expert report and that she testified to
21        at deposition.
22             THE WITNESS:  As I voiced earlier, I
23        have my own concern about not getting over the
24        line on that or even too close for comfort.
25        But I can also easily say I did not attempt a
```

```
                                              Page 1

 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CONNECTICUT
 2

 3    CONSERVATION LAW FOUNDATION,        )
      INC.,                               )
 4                                        )
            Plaintiff,                    )Case No:
 5                                        )3:21-cv-
                                          )00932-SVN
 6    vs.                                 )
                                          )
 7    PIKE FUELS LIMITED                  )
      PARTNERSHIP,                  )
 8                                        )
            Defendant.                    )
 9    _____
10
11                 DEPOSITION OF
12              JAMES O'DONNELL, Ph.D.
13
14    DATE:           September 19, 2025
15    TIME:           9:00 a.m.
16    HELD AT:        Wiggin and Dana LLP
                      265 Church Street
17                    New Haven, Connecticut
18
19       By:          Sarah J. Miner, RPR, LSR #238
20
21
22
23
24
25
```

Page 12

```
 1              has adequately prepared for the effects of

 2              climate change.

 3       BY MS. BOOTH:

 4          Q    In the Shell case, did you give an opinion

 5       about sea level rise in the New Haven Harbor?

 6                  MR. RAYMOND:  Objection.  I'm going

 7              to instruct the witness not to violate the

 8              standing protective order in that case by

 9              discussing a document that's been marked

10              "confidential."

11                  Counsel, will you please move on from

12              this area that we have explained many

13              times over email in the last month.

14                  MS. BOOTH:  This is our deposition,

15              and I get to ask the questions for the

16              record that we need.  So I will continue

17              to do that and you can lodge your

18              appropriate objections.

19                  MR. RAYMOND:  You may ask those

20              questions, but I want to lodge my standing

21              objection to any question regarding the

22              Shell Connecticut report, which has been

23              marked "confidential" by the defendants in

24              that case.

25       BY MS. BOOTH:
```

```
                                          Page 13
 1        Q   Dr. O'Donnell, did you give an opinion in
 2   the Shell case about what the causes of sea level
 3   rise are?
 4             MR. RAYMOND:  Objection.  Instruct
 5             you not to answer on the substance of your
 6             report in that case.
 7   BY MS. BOOTH:
 8        Q   Dr. O'Donnell, in the Shell case, did you
 9   give an opinion about whether sea level rise will
10   continue in the future?
11             MR. RAYMOND:  Same objection.  Same
12             instruction.
13   BY MS. BOOTH:
14        Q   In the Shell case, did you give an opinion
15   about whether Shell was aware of sea level rise or
16   climate change?
17             MR. RAYMOND:  Same objection.  Same
18             instruction.
19   BY MS. BOOTH:
20        Q   In the Shell case, did you give an opinion
21   about whether Shell should have known about these
22   topics?
23             MR. RAYMOND:  Same objection.  Same
24             instruction.
25   BY MS. BOOTH:
```

```
                                           Page 14
 1          Q    Would you agree that at least some of your
 2     opinions in this case are on the same topics as in
 3     the Shell case?
 4                     MR. RAYMOND:  Objection.
 5                     Limiting it to not talking about the
 6                substance of your Shell report.  Outside
 7                of that, you can answer.
 8                     THE WITNESS:  Would you repeat it so
 9                I am specific.
10     BY MS. BOOTH:
11          Q    Would you agree that at least some of your
12     opinions in this case are on the same topic as
13     those on which you opined in the Shell case?
14                     MR. RAYMOND:  Objection to form.
15                     You can answer if you understand it,
16                with limitation.
17                     THE WITNESS:  Yes.
18     BY MS. BOOTH:
19          Q    And which topics that you opined on in the
20     Shell case are similar to those that you opined on
21     in this lawsuit?
22                     MR. RAYMOND:  I am objecting and
23                instructing the witness not to answer on
24                the basis of the Connecticut standing
25                protective order and the designation by
```

```
                                              Page 15

 1              the defendants in the Shell Connecticut
 2              case of the materials in the report as
 3              confidential.
 4    BY MS. BOOTH:
 5        Q    Which of your opinions in the Shell case
 6    are based on nonpublic information?
 7                   MR. RAYMOND:  Same objection.  Same
 8              instruction not to answer.
 9    BY MS. BOOTH:
10        Q    Which of your opinions do you understand
11    to be based on confidential information?
12                   MR. RAYMOND:  Just to clarify.  Are
13              you asking in this case or the Shell case?
14                   MS. BOOTH:  Thank you.
15    BY MS. BOOTH:
16        Q    In the Shell case, which of your opinions
17    do you understand to be based on confidential
18    information?
19                   MR. RAYMOND:  Same objection.  Same
20              instruction.  He is not a lawyer.  He is
21              not going to go through this and say what
22              is confidential or not.
23    BY MS. BOOTH:
24        Q    Do you have a copy of your expert report
25    in the Shell case in your possession?
```

```
                                        Page 16
 1         A    No.
 2         Q    You do not have a copy of the expert
 3    report that you wrote in the Shell case in your
 4    possession?
 5              MR. RAYMOND:  Are you asking him like
 6              right now, just to be clear or --
 7    BY MS. BOOTH:
 8         Q    I said in your possession.
 9              Do you have a copy on your computer?  Do
10    you have a copy in your office, at home?
11    Somewhere, do you have a copy in your possession?
12         A    Yes.
13         Q    Do you have a copy of your deposition
14    transcript from the Shell case in your possession
15    on the computer at home, printed at your office,
16    anywhere?
17         A    No.
18         Q    How much have you been compensated for
19    your expert services in Shell?
20              MR. RAYMOND:  Objection to form.
21              But you can talk about how much you
22              made, sure.
23              THE WITNESS:  Yeah.  I hesitate to be
24              specific because my memory is not very
25              clear.  But I do recall I recently had to
```

R O U G H   D R A F T * N O T   C E R T I F I E D
                                                        1

1  Read and sign.  Sworn sworn Matthew Barlow,

2  university of Massachusetts Lowell, one university

3  avenue, Lowell Massachusetts.

4  DIRECT EXAMINATION

5  BY MR. LEE:

6      Q. Good morning, Dr. Barlow.  My name is

7  Zachary Lee. I will be asking you some questions

8  today.  I appreciate you being here this morning.

9  As you know, I represent the defendants in this

10 lawsuit, which was brought by the Conservation Law

11 foundation in 2021 regarding allegations related

12 to the defendants New Haven fuel storage terminal

13 at 500 water street, New Haven Connecticut.  I may

14 use CLF as short hand for Conservation Law

15 Foundation throughout today's deposition.  Is that

16 all right?

17     A. Yes.

18     Q. I may also refer to the property I just

19 mentioned as the terminal.  Is that fair?

20     A. Yes.

21     Q. Similarly, I may refer to my client, Pike

22 Fuels Limited Partnership, simply as Pike Fuels or

23 Pike.  Is that understood?

6          MR. LEE:  Sure.

7          MS. GEHI:  On Monday.

8          MR. LEE: I'm happy to disclose those

9   now. I'll represent we received those. We'll mark

10  those as Barlow exhibit 4 -- or 3, pardon me.

11     A. I'm sorry do you repeat the standing

12  question.

13     Q. Sure.  Did anyone assist you in preparing

14  this document?

15     A. Yes.

16     Q. The amended documents as well?

17     A. Yes.

18     Q. You signed this documents, correct?

19     A. That is correct, yes.

20     Q. I will represent that we did receive some

21  documents, including what I will refer to as

22  Barlow exhibit 4?

23     A. Thank you.

24     Q. Do you know what these documents -- this

25  documents that I just handed you is?
           R O U G H   D R A F T  *  N O T   C E R T I F I E D
                                              11


1     A. It appears to be an invoice from me to CLF.

2     Q. Mm-hmm.  We'll get back to it in a few

3   minutes.  I do want to discuss the other document

4   requests first, though.  So we did receive some

5   documents from documents request number one.  For

6   document request number 3, which is the -- your

7   objections, you did not conduct any modeling and

8   predictive analysis is that correct?

9      A. That's correct, yes.

10     Q. For the fourth document production request,

11  you did not visit the site or conduct an

12  inspection of the terminal.  Is that correct?

13     A. That's correct.

14     Q. And for the 5th document request, are you

15  aware of the lawsuit between Shell and CLF in

16  Connecticut?

17     A. In Connecticut, I think so, yes.

18     Q. Have you reviewed the complaint in that

19  Shell Connecticut case?

20         MS. GEHI:  Objection, I just want to

21  instruct Dr. Barlow not to disclose any

22  information subject to protective order.

23     A. To my recollection, yes.  I'm not entirely

24  sure which case numbers are involved, but --

25     Q. Mm-hmm.  What is your understanding of that

           R O U G H   D R A F T * N O T   C E R T I F I E D

                                                   12

1   case?

2          MS. GEHI:  Objection.  Instruct doctor

3    -- sorry, instruct you not to answer.  We stand

4    firm in our objection is regarding any questions

5    related to the Shell case.

6          MR. LEE:  Any questions.

7          MS. GEHI:  Any questions relating to

8    the work or any sources relied on for, in order to

9    prepare his work product.

10          MR. LEE:  Okay.

11    Q. Were you deposed in that case?

12    A. Yes.

13    Q. You were?  Have you produced the transcript

14    of that deposition in this case?

15    A. I personally have not produced that

16    transcript.

17    Q. Mm-hmm.  Have you produced the expert report

18    that you published in that case, or not been

19    published, but produced in that case in this one?

20    A. Have I produced it to this case?

21    Q. Mm-hmm.

22    A. Not to my knowledge.

23    Q. Do you have copies of these documents, or

24    access to copies of these documents?

25    A. I have access to cop -- to the report, yes.

              R O U G H   D R A F T * N O T   C E R T I F I E D

1     Q. Mm-hmm.  Was your opinion in that matter on

2   the same general topic as the opinion you wrote

3   for this lawsuit?

4           MS. GEHI:  Objection.  Instruct Dr.

5   Barlow not to answer based on information subject

6   to the protective order.

7     Q. Which expert report did you write first?

8     A. That expert report.

9     Q. Did you use that as a starting point to

10  produce this expert report?

11          MS. GEHI:  Objection, instruct Dr.

12  Barlow not to answer.

13    Q. If I ran a red line, how much would the

14  reports over lap?

15          MS. GEHI:  Objection, instruct Dr.

16  Barlow not to answer based on protective order.

17    Q. Is it your opinion that your expert report

18  in the Shell case in Connecticut against, compared

19  to this one, is irrelevant?

20          MS. GEHI:  Objection, instructs Dr.

21  Barlow not to answer.

22    Q. How much money have you billed for your

23  expert services in the Shell case?

24    A. I don't know off the top of my head.