UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Conservation Law Foundation, Inc., <br><br>  Plaintiff, <br><br> v. <br><br> Pike Fuels Limited Partnership, <br><br>  Defendant. | Civil No. 3:21-cv-00932 (SVN) (TOF) <br><br><br> October 23, 2025 |

**RULING AND ORDER ON PLAINTIFF'S MOTION
TO DETERMINE THE SUFFICIENCY OF DEFENDANT'S RESPONSES TO
PLAINTIFF'S REQUESTS FOR ADMISSION [ECF No. 254]**

The Plaintiff, Conservation Law Foundation, Inc. ("CLF"), has moved the Court to determine the sufficiency of the responses of the Defendant, Pike Fuels Limited Partnership ("Pike") to twelve requests for admission ("RFAs") in this Clean Water Act case. (Mot. to Determine the Sufficiency of Defendant's Answers and Objections to Plaintiff's Requests for Admission (ECF No. 254) hereinafter "Motion" or "Mot."). For the following reasons, the Plaintiff's Motion will be **GRANTED IN PART AND DENIED IN PART** as set forth more fully in Section III below.

**I.  BACKGROUND**

The "Clean Water Act," otherwise known as the Federal Water Pollution Control Act (33 U.S.C. §§ 1251, *et seq*.), was enacted by Congress to restore and maintain the chemical, physical and biological integrity of the waters of the United States. 33 U.S.C. § 1251(a). One of the means established by Congress to achieve this purpose is a provision that allows for lawsuits to be brought by citizens who have an interest "which is or may be adversely affected" by any alleged violations of the standards set forth by the Clean Water Act for effluent discharges. 33 U.S.C. § 1365.

1

CLF commenced this lawsuit under these citizen enforcement provisions in July, 2021, seeking declaratory and injunctive relief, as well as civil penalties, for Pike's alleged violations of the Clean Water Act and of the Connecticut Department of Energy & Environmental Protection's ("DEEP") Connecticut Industrial Stormwater Permit No. GSI001571 (the "Permit").[1] (Compl., ECF No. 1.) The claims arise out of the bulk petroleum storage facility located at 500 Waterfront Street in New Haven, Connecticut (the "Terminal"), which was owned and operated by Pike from October, 2011 to April 9, 2024. (2d Am. Compl. ECF No. 230, ¶ 21.) The Terminal is a 13-acre site with sixteen above-ground bulk storage tanks that contain large quantities of various petroleum products. (*Id.* ¶¶ 47-48.)

According to CLF, the Terminal is ill-equipped to weather the projected high-intensity storms assertedly induced by climate change. (*Id.* ¶¶ 23-27.) In essence, CLF claims that, because Pike has failed to adequately maintain the facility and has failed to take the necessary steps to bolster its capability to withstand the effects of rising sea levels and increasingly intense storms, the Terminal is likely to produce pollution events during and after those storms. (*E.g., id.* ¶¶ 256, 341-42.) Relatedly, CLF alleges that Pike's Stormwater Pollution Prevention Plan ("SWPPP"), a requirement under the Permit, was unlawfully certified and is out of date. (*Id.* ¶16 ; *see also* SWPPP, ECF No. 230-2.)

The parties commenced discovery, and CLF served seventy-four RFAs on Pike on April 30, 2025. (ECF No. 254-2.) Pike objected to all seventy-four on May 30, 2025. (ECF No. 254-3.) CLF then sent Pike an eleven-page deficiency letter on June 25, 2025 (ECF No. 254-4), in which it revised twenty of the RFAs in response to Pike's objections. (Motion at 2-3.) The parties

---

[1] The lawsuit was originally brought against Gulf Oil Limited Partnership, which later changed its legal name to Pike Fuels Limited Partnership. (Notice of Name Change, ECF No. 209).

2

met and conferred over Zoom on June 27, 2025, but the conference failed to resolve all their disputes. (Decl. of A. McMonigle, ECF No. 254-1, at 2.)

CLF filed the instant motion three days later. Although Pike had objected to all seventy-four RFAs, CLF sought an order "either that the RFAs are admitted or that Pike must serve amended answers" with respect to only thirty. (Motion at 3.) The presiding District Judge, the Hon. Sarala V. Nagala, referred the motion to the undersigned Magistrate Judge for adjudication. Pike responded to CLF's Motion, filing a memorandum in opposition. (Opp'n, ECF No. 258.) CLF then filed a reply brief. (Reply, ECF No. 264.)

The Court heard oral argument on August 25, 2025, and during the argument it concluded that the parties' dispute would benefit from additional meeting and conferring. (Order, ECF No. 280.) It directed the parties to confer in a "good faith effort to resolve as many disputes as possible," and to "file a joint status report on the docket, identifying which requests for admission have been resolved and which remain disputed." (*Id.*) On September 8, 2025, Pike reported that it would be serving revised responses to CLF's RFAs, and that the parties expected to meet and confer over those responses. (Joint Status Report, ECF No. 288.)

On September 15, 2025, the parties informed the Court that Pike had served revised responses. (Joint Status Report, ECF No. 295, at 2.) They added that they had had a "productive" meeting about them, and that they expected to be able to "further work together" to resolve any ongoing disputes concerning the revised responses. (Joint Status Report, ECF No. 295, at 2.) The Court instructed the parties to continue their efforts and to file another status report, indicating which RFAs remained outstanding. (Order, ECF No. 296.)

On September 29, 2025, the parties informed the Court that they had resolved most but not all their disputes. Disagreements remain over twelve RFAs: One, Four, Twelve, Twenty-one,

3

Twenty-two, Twenty-seven, Twenty-Eight, Thirty-three, Thirty-seven, Forty-nine, Fifty-four, and Fifty-six. (Joint Status Report (hereafter "Report"), ECF No. 299.) During the meet-and-confer process, CLF further altered the text of some of those RFAs in response to Pike's objections, and Pike's objections likewise changed in some instances. Thus, the operative versions of the RFAs and Pike's objections thereto are the ones included in the September 29th Report, not the original Motion. (Report at 2-6) (hereinafter "Modified RFAs"). In any event, the matter is now ripe for decision.

## II. DISCUSSION

### A. Applicable Legal Principles

Rule 36 of the Federal Rules of Civil Procedure states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either; and . . . the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

If the receiving party answers the request rather than object, it has three options for doing so. "[I]ts answer must either admit the matter, 'specifically deny it,' or 'state in detail why the answering party cannot truthfully admit or deny it.'" *Shea v. Sieunarine*, No. 3:21-cv-673 (JCH) (TOF), 2022 WL 2305554, at *2 (D. Conn. June 27, 2022) (quoting Fed. R. Civ. P. 36(a)(4)). If the party denies the request, its "denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). If the party

claims to be unable to admit or deny, it may say so, but only if it also "states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.*

As the text of Rule 36(a)(4) makes plain, the responding party may qualify its answer when appropriate. Of course, "[w]hen a request for admission is properly drafted, the answering party should have little or no difficulty responding." *Vaca v. Rio Props., Inc.*, No. 2:08-cv-940 (RLH) (LRL), 2010 WL 4317019, at *1 (D. Nev. Oct. 27, 2010) (citing 7 Moore's Federal Practice - Civil § 36.03). "In responding to an unambiguous, succinct, but specific request for admission the responding party should simply be able to agree or disagree with the request[.]" *Id.* "There will be times, however, when the answer cannot be a succinct yes or no, and a qualification of the response is indeed necessary." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). "Generally, qualification is permitted if the statement, although containing some truth, . . . standing alone out of context of the whole truth . . . convey[s] unwarranted unfair references." *Id.* at 77-78 (quoting *Diederich v. Dep't of the Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990)). "These qualifications are to provide clarity and lucidity to the genuineness of the issue and not to obfuscate, frustrate, or compound the references." *Id.* at 78 (citing 7 Moore's Federal Practice § 36.10[6]). In *Vaca,* for example, the plaintiff in a personal injury case asked the defendant to admit the accuracy of her damages calculation. 2010 WL 4317019, at *2. The defendant admitted "only that the mathematical calculation on the exhibits is correct; not that the numbers in the exhibits are relevant, accurate, authentic, reasonable, and without regard to the origins of the information." *Id.* The plaintiff asserted that this qualification was improper, but the court disagreed. *Id.* "It is permissible for a party to qualify an answer or partial denial when good faith requires it to do so[,]"

5

the court noted, and in this instance, the qualification was permissible because it was "not an obfuscation, but more clearly specifies what is admitted[.]" *Id.*

If the receiving party chooses to object rather than answer, "the grounds for objecting . . . must be stated." Fed. R. Civ. P. 36(a)(5). One proper basis for objecting is when the request is too vague or imprecise to permit an intelligible admission or denial without an overlong qualification. "[T]he requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Henry*, 212 F.R.D. at 77.

Another proper basis for objecting is when the requests seek admissions on "pure . . . opinions of law." *Vincent ex rel. Vincent v. Mortman*, No. 3:04-cv-491 (JBA) (JGM), 2006 WL 1281758, at *2 (D. Conn. May 3, 2006) (quoting 7 Moore's Federal Practice § 36.10[8] (3d ed. 2006)). Rule 36(a)(1)(A) authorizes use of the request for admission device only with respect to "facts, the application of law to fact, or opinions about either," and by negative implication, requests to admit "legal conclusions . . . are not contemplated by the rule." *Vincent*, 2006 WL 1281758, at *2 (citation and quotation marks omitted). While "[t]he distinction between a request that permissibly seeks the admission of an issue requiring the application of the law to the facts of the case and a request that impermissibly seeks the admission of a pure issue of law is not easy to draw," *U.S. ex rel. Bibby v. Mortg. Investors Corp.*, 323 F.R.D. 424, 428 (N.D. Ga. 2017), several courts in the Second Circuit have held that requests for admission asking a party to admit that it met or was subject to a particular legal standard fall on the impermissible side of that divide. *Shea*, 2022 WL 2305554, at *3; *see also Perez v. Aircom Mgmt. Corp., Inc.*, No. 12-6-322-CIV, 2013 WL 45895, at *2 (S.D. Fla. Jan. 3, 2013) (holding that requests for admission asking a party to

6

admit that it is subject to particular statutes "improperly seeks admissions of pure legal conclusions").

In their briefs, the parties contended over this last point. (*Compare* Motion at 11-12 *with* Opp'n at 4 & n.4.) At oral argument, the Court explained why both parties' arguments were overstated or otherwise unpersuasive. On the one hand, CLF contended that *Shea* "received negative treatment" in *AETC II Privatized Housing, LLC v. United States*, 176 Fed. Cl. 622 (2025). (Motion at 11-12.) But the *Shea* court merely pointed out that there was a split of authority across the country on requests for admission that "ask[] a party to admit that it met or was subject to a particular standard," and it chose to follow one line of authority because it was more consistent with other decisions in this Circuit. 2022 WL 2305554, at *3. An out-of-Circuit case that followed the other line of authority provides little if any reason to question this holding. On the other hand, Pike overread *Shea* as applying beyond the discrete context of requests that ask a party to admit that it was subject to a particular statute or legal standard – and indeed, it cited *Shea* in its objection to almost half of CLF's RFAs, including some that plainly and permissibly called for the application of law to fact. (*E.g.*, ECF No. 254-3 at RFA Nos. 8, 14, 15.)

Perhaps in response to the colloquy at oral argument, the parties have evidently been able to resolve most of the disputes that turned on this point. (*Compare* Motion (seeking order with respect to thirty disputed RFAs) *with* Report (reporting that only twelve remain unresolved).) As will be shown, the remaining disputes turn as much on Pike's vagueness and other objections as they do on its objections about legal conclusions. At any rate, the matter having been fully briefed and argued, the Court will now rule on those disputes.

B.   **Modified Requests as to Which the Motion Will Be Granted**

*1. Modified RFA One.* Modified RFA One asked Pike to admit or deny that it "does not manage or treat discharges from storm surge as stormwater discharges under the [] Permit."

7

(Report at 2.) Pike objects that this RFA impermissibly "calls for a legal conclusion" in that either affirming or denying this RFA would require Pike to make "the legal determination of whether storm surge is or is not a stormwater discharge under the [] Permit." (*Id.*)

The Court disagrees with Pike. Modified RFA One does not ask Pike to state whether storm surge discharges legally qualify as stormwater discharges under the Permit. Rather, it asks only whether Pike in fact treats them as such, irrespective of whether it is required to do so. Because the RFA does not impermissibly ask Pike to admit or deny a pure legal conclusion, Pike's objection to Modified RFA One is OVERRULED and Pike will be directed to respond to it.

*2. Modified RFA Twelve.* Modified RFA Twelve asked Pike to admit or deny that its "responsible corporate officer did not make inquiry of persons who manage [Pike's] system for ensuring that all terms and conditions of the [] Permit continued to be met for all discharges authorized by the General Permit regarding accounting for climate change factors at the Terminal." (*Id.*) Pike objects to Modified RFA Twelve as seeking information "outside the time allowed under the scheduling order" because the original version "did not seek any information regarding 'climate change factors.'" (*Id.* at 3.) Pike further objects that this RFA is "vague and ambiguous" and that it is impermissibly a compound RFA. (*Id.*)

Pike's scheduling order objection requires further explanation. Judge Nagala's initial scheduling order provided that "[a]ny motion for an order compelling disclosure or discovery pursuant to Fed. R. Civ. P. 37(a) must be filed within 30 days after the response was due[.]" (Sched. Order, ECF No. 58, at 2.) Pike served its RFA responses on May 30, 2025 (ECF No. 254-3), and any motions to compel directed to those responses were therefore due by June 30, 2025. (*See* Sched. Order, ECF No. 58, at 2.) Moreover, at the time CLF filed its motion, a subsequent order had established June 30, 2025, as the amended deadline for completing all fact discovery.

(Order, ECF No. 229.) Pike asserts that CLF materially broadened RFA Twelve during September's meet-and-confer sessions to the point where it is essentially a new RFA, and that both the new RFA and the motion to compel with respect to it are untimely. (Report at 2-3.)

The Court disagrees that Modified RFA Twelve is broader than its original counterpart. Whereas the original asked about compliance with "all terms and conditions of the [] Permit," the modified version limits the inquiry to those "regarding accounting for climate change factors at the Terminal." (*Compare* ECF No. 254-2, at 6 *with* Report at 2-3.) CLF should not be penalized for narrowing its request in response to the Court's instruction to continue meeting and conferring. Pike's scheduling objection to Modified RFA Twelve is therefore OVERRULED.

Pike's vagueness and compound objections are likewise OVERRULED. With respect to vagueness, Pike protests that the terms "make inquiry," "management," and "system" are undefined and vague in the context of this RFA (ECF No. 254-3, at 7), but it does not satisfactorily explain why. If Pike fears that CLF is using undefined terms in a loaded way, it may of course qualify its response by explaining which meaning it is using. *Cf. Henry*, 212 F.R.D. at 77–78. And the Court disagrees with Pike's contention that, because it may have to consider several different facts in formulating its response, Modified RFA Twelve is impermissibly compound. (Opp'n at 9-10.) The RFA encompasses a single idea – whether the responsible corporate officer talked to the people who manage Permit compliance on the ground. To the extent that Pike is unable to admit or deny any specific facts contained within the RFA, it must specifically identify which facts it is able to admit or deny and respond to those that it can. *See Wang v. Omni Hotels Mgmt. Corp.*, No. 3:18-cv-2000 (CSH), 2021 WL 5904021, at *8 (D. Conn. Dec. 14, 2021) (ordering party to unambiguously answer any unobjected to portion of an RFA rather than

generalizing the entire RFA as "vague"). The RFA is not so compound as to frustrate Pike's ability to answer, or to make answering it unreasonably difficult. Pike will be directed to respond to it.

*3. Modified RFA Twenty-one.* Modified RFA Twenty-one asked Pike to admit or deny that, "when implementing stormwater management at the Terminal, [it] did not consider the impact of climate change factors in [its] analysis of the potential of various sources at the Terminal to contribute pollutants to stormwater discharges." (Report at 3.) The RFA went on to define the term "climate change factors" as "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change." (*Id.*) It also defined "stormwater management" as "includ[ing] but . . . not limited to any measure to treat, dispose, divert, or otherwise manage stormwater at the Terminal." (*Id.*)

Pike objected that Modified RFA Twenty-one is "compound" (*id.*), but it does not explain why. As with Modified RFA Twelve, Modified RFA Twenty-one encompasses only a single idea – whether Pike considered climate change factors when implementing stormwater management measures at the Terminal. Pike also protests that the term "climate change factors" remains "confusing" even after CLF defined it (*id.*), but the Court disagrees because the definition is sufficiently precise to permit Pike to answer.

Pike further objects that, in using the word "potential," Modified RFA Twenty-one "inappropriately seek[s] admission regarding the *possibility* of something happening." (Opp'n at 10.) It notes that, in a similar case brought by CLF against Shell Oil in the District of Rhode Island, Magistrate Judge Patricia Sullivan declined to compel compliance with CLF RFAs that "request[ed] admissions regarding what it 'possible.'" (*Id.*) (citing *Conservation L. Found. v. Shell Oil Prods. US*, No. 1:17-cv-396 (WES) (PAS), 2025 WL 1530508, at *2 (D.R.I. May 29, 2025)). But there are meaningful differences between Modified RFA Twenty-one in this case and the

RFAs in the Rhode Island case. In that case, CLF's RFAs asked Shell to admit whether it was "possible" to erect flood barriers or make other modifications to stormwater management systems at its Providence terminal (ECF No. 202-3 in D.R.I. case no. 17-cv-396), and Judge Sullivan held that they "called for irrelevant speculation." *Conservation L. Found.*, 2025 WL 1530508, at *2. The thrust of Judge Sullivan's reasoning pertains to the *relevancy* of asking Shell to admit to what is possible in the *future*. As Judge Sullivan went on to note, "the underlying information sought by these RFAs [was] relevant" and that CLF could "seek it through more nuanced discovery methods" like "questioning a knowledgeable witness during a deposition." *Id.*, at *2. Put differently, what was impermissible about the "speculative" RFAs in the Rhode Island case was that they asked Shell to admit *as fact* something that had not actually happened yet.

Modified RFA Twenty-one, by contrast, does not ask Pike to admit to what is possible in the future. Instead, it asks Pike to admit or deny that its *past* stormwater management considered climate change factors in analyzing potential pollutant escapes. In other words, Modified RFA Twenty-one does not call for irrelevant speculation about future events because the word "potential" is referring to the capability of the concrete "sources at the Terminal" to contribute to pollution events. Whereas other uses of the word "potential" or "potentially" can invite irrelevant speculation (see discussion of Modified RFA Twenty-eight, *infra*), Modified RFA Twenty-one asks Pike to admit or deny that, when implementing its stormwater management policy, it considered the potential for the chemicals stored at the Terminal to contribute pollutants to stormwater discharges. This is a straightforward question of fact.

Finally, Pike argues that Modified RFA Twenty-one is an "improper" attempt by CLF to prove its "novel theory" – that is, its claim that Pike was required to consider the effects of climate change in operating and maintaining the Terminal but failed to do so under the terms of the Permit.

11

(Opp'n at 4-5.) This RFA does not, however, specifically discuss the terms of the Permit nor mention the "requirements" as interpreted by Pike. Likewise, Modified RFA Twenty-one makes no mention of any legal duty. Instead, it focuses on whether Pike undertook to "consider the impact of climate change factors" on potential pollution from the Terminal. This can be answered without reference to what the Permit requires, and Pike can of course qualify its answer if it feels it needs to do so for purposes of clarification rather than obfuscation. This RFA is confined to a factual inquiry, one that Pike can affirm or deny. Pike's objections to Modified RFA Twenty-one are therefore OVERRULED and Pike will be directed to respond to it.

    *4. Modified RFA Twenty-two.* Modified RFA Twenty-two asked Pike to admit or deny whether it "considers the impacts of climate change factors on the diversion of uncontaminated run-on to avoid areas that may contribute pollutants." (Report at 3.) The RFA defines "diversion" as "the act or instance of diverting or straying from a course, activity, or use: DEVIATION." (*Id.*) It further defines "climate change factors" as "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change," and "uncontaminated run-on" as "refer[ring] generally to liquid that moves onto the Terminal site that is not contaminated with pollutants." (*Id.*)

    Pike objects that this RFA is "vague and ambiguous," specifically pointing to the term "uncontaminated run-on," but this objection cannot be sustained now that CLF has defined the term. (*Id.*) The original RFA Twenty-two did not define "uncontaminated run-on" (*see* ECF No. 254-3, at 11) but Pike does not satisfactorily explain how the modified version remains vague even after CLF incorporated a definition of the term. (Report at 3.) Pike also objected that RFA Twenty-two called for a legal conclusion (Opp'n at 4), but the Court disagrees. Modified RFA Twenty-two asked Pike to admit or deny a factual proposition about what it considered in

managing uncontaminated run-on. This is not an improper use of Rule 36, and Pike's objections are accordingly OVERRULED and Pike will be directed to respond.

*5. Modified RFA Twenty-seven.* Modified RFA Twenty-seven asked Pike to admit or deny that its "submittals to [] DEEP did not include consideration of the impacts of climate change factors on the Terminal." (Report at 3.) As with Modified RFAs Twenty-one and Twenty-two, this RFA defined the term "climate change factors" as "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change." (*Id.* at 3-4.) It also defined "submittals" as "information submitted in the SWPPPs and via another medium or manner." (*Id.* at 4.)

Pike asserts that the information sought by this RFA is irrelevant (*id.*), but the Court disagrees. Rule 36(a)(1) provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)[.]" Rule 26(b)(1), in turn, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ P. 26(b)(1). In this case, CLF claims that Pike "failed to submit relevant facts . . . regarding the risks of climate-change" to DEEP during the permitting process (2d Am. Compl., ECF No.230, ¶ 397), and Modified RFA Twenty-seven is plainly relevant to that claim. Pike naturally disagrees with the claim, and it contends that neither the Clean Water Act nor the DEEP permitting process required it to consider "the amorphous topic of 'climate change[.]'" (Opp'n at 5.) But it is well established that "a party may not typically object to relevant discovery on the ground that it believes its opponent's case to be meritless." *Huseby, LLC v. Bailey*, No. 3:20-cv-167 (JBA) (TOF), 2021 WL 3206776, at *7 (D. Conn. July 29, 2021). Nor may a party demand the "unilateral ability to dictate the scope of discovery based on [its] own views of the parties' respective theories of the

case." *Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-933 (JAM) (TOF), 2023 WL 5434760, at *18 (D. Conn. Aug. 22, 2023) (quoting *Xchange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-cv-54 (GS) (CFH), 2015 WL 773752, at *3 (N.D.N.Y. Feb. 24, 2015). Unless and until Pike succeeds in a motion to dismiss it, CLF's claim about climate change factors and the permitting process is a "claim or defense" for purposes of Rule 26(b)(1), and Modified RFA Twenty-seven is relevant to it.[2]

Pike also asserts that Modified RFA Twenty-seven impermissibly asks it to admit a legal conclusion (Opp'n at 5-6), but the Court disagrees with this objection as well. The RFA does not ask Pike to admit a point of law; instead, it asks only after the fact of whether Pike considered the impact of climate change factors on the Terminal when it made its submissions to DEEP. Neither an admission nor a denial would prevent Pike from making the legal argument that it was not required to consider those factors in the permitting process. Finally, Pike objects to Modified RFA Twenty-seven on the ground that it "uses a confusing definition of the terms 'climate change factors' and 'submittals'" (Report at 3), but it does not explain why the definitions are so confusing

---

[2] To be sure, *Huseby* and *Shell Oil* concerned discovery requests under Rules 33 and 34, and this case concerns requests for admission under Rule 36, which have generally been held not to be discovery devices *per se*. *See, e.g., Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 198 (D. Conn. 2014) ("Rule 36 is not a discovery device.") (citation and quotation marks omitted); *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 402 (D. Conn. 2005) (citing cases for the proposition that "requests for admission under Rule 36 of the Federal Rules of Civil Procedure are not discovery devices *per se*," although holding that they are subject to discovery deadlines). In contrast to interrogatories, requests for production of documents, and depositions – the "basic purpose" of which is to "elicit facts and information" – "requests for admission are used to establish admission of facts about which there is no real dispute." *Napolitano*, 297 F.R.D. at 198. Nevertheless, courts have applied Rule 26(b)(1)'s relevance standard to requests for admissions under Rule 36. *E.g., Michael Kors, LLC v. Su Yan Ye*, No. 1:18-cv-2684 (KHP), 2019 WL 1517552, at *7 (S.D.N.Y. Apr. 8, 2019) ("Rule 36 incorporates Rule 26(b)(1) standards[.]"); *Lamoureux v. Genesis Pharm. Servs., Inc.*, 226 F.R.D. 154, 162 (D. Conn. 2004); *Sequa Corp. v. Gelmin*, No. 91-Civ.-8675 (CSH), 1993 WL 350029, at *1 n.1 (S.D.N.Y. Sept. 7, 1993) ("Plaintiffs appear to contend that Rule 36 requests are not limited by a relevance requirement. This is plainly not correct, although relevance as defined by Rule 26(b)(1) is liberally construed.").

14

as to frustrate its ability to answer. Pike's objections to Modified RFA Twenty-seven are OVERRULED and Pike will be directed to respond to it.

      *6. Modified RFA Forty-nine.* Modified RFA Forty-nine asked Pike to admit or deny that "DEEP did not communicate to or inform [Pike] that it could allow stormwater to seep into the ground at the Terminal, including the ground within the Terminal's secondary containment area." (Report at 5.) Pike contends that Modified RFA Forty-nine is "simply a restatement" of the version initially served in April, and it therefore asserts the same objections now as it did then. (*Id.*) But the RFA has plainly undergone material changes since the initial version. In May, Pike objected to the original version of RFA Forty-nine on the ground that it used the term "infiltrate" but failed to define it. (ECF No. 254-3, at 24.) Modified RFA Forty-nine does not use that term. (Report at 5.) Similarly, Pike objected to the original version because it asked for an admission that Pike had not "receive[d] approval from DEEP to infiltrate storm water into the ground," which Pike contends was tantamount to asking for admission of a "duty [that] did not exist." (ECF No. 254-3, at 24.) But Modified RFA Forty-nine does not use those terms either. Because Modified RFA Forty-Nine has been materially revised since the original version was served in April, Pike's principal objection is unavailing.

      Pike still objects that Modified RFA Forty-nine "calls for a legal conclusion" even after modification (*id.*), but the Court disagrees. This is also a straightforward question of fact – asking whether Pike received any communications from DEEP that authorize stormwater seepage into the ground at the Terminal. Pike's objections to Modified RFA Forty-nine are OVERRULED and Pike will be directed to respond to it.

15

C.     **Modified Requests As to Which the Motion Will Be Denied**

*1.     Modified RFA Four.*  Modified RFA Four asked Pike to admit that "the term 'stormwater' in any of [Pike's] permits issued by [] DEEP for the Terminal does not include storm surge." (Report, ECF No. 299, at 2.) In contrast to Modified RFA One, which also inquired about stormwater but in a factual way, this RFA seeks admission of a purely legal conclusion about the legal import of a term within a complex document. This is impermissible because this RFA calls for Pike to make a legal determination as to what constitutes stormwater for purposes of permits issued by DEEP. *See Vincent*, 2006 WL 1281758, at *2 (quoting 7 Moore's Federal Practice ¶ 36.10[8] (3d ed. 2006) for the proposition that "'pure requests for opinions or law,' such as 'legal conclusions' . . . are not contemplated by" Rule 36.). Pike's objection to Modified RFA Four is SUSTAINED.

*2. Modified RFA Twenty-eight.*  Modified RFA Twenty-eight asked Pike to admit or deny that it "was aware of potential impacts of climate change factors on the Terminal when [it] made submittals to [] DEEP." (Report at 4.) Again, the term "climate change factors" was defined as "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change." And the term "submittals" was again defined as "refer[ring] to information submitted in the SWPPPs and via another medium or manner." (*Id.*)

While the Court declines to accept Pike's relevance objection, it does agree that this RFA is too imprecise and speculative to enforce. Under Rule 36, a "requesting party bears the burden of setting forth its requests simply, directly, [and] not vaguely or ambiguously[.]" *Henry*, 212 F.R.D. at 77. Although CLF defined "climate change factors" and it anchored the request at the time that Pike made submissions to DEEP, it did not define "*potential impacts* of climate change

16

factors." There is too much imprecision in that term for the RFA to serve its proper purpose. *See Diederich*, 132 F.R.D. at 616 ("[T]he purpose of Requests for Admissions is . . . to narrow issues for trial."). Additionally, in contrast to Modified RFA Twenty-one, which inquired after Pike's past, concrete responses to potential future scenarios, Modified RFA Twenty-eight asked Pike for admissions about its general "aware[ness]" of future possible *effects* of climate change factors. Although climate change factors was a defined term, the term "potential impacts" expands the scope of this idea too far. Modified RFA Twenty-eight is therefore much closer than Modified RFA Twenty-one to the RFAs that Judge Sullivan declined to enforce in the Rhode Island case. *Conservation L. Found.*, 2025 WL 1530508, at *2. Pike's vagueness objection to Modified RFA Twenty-eight is SUSTAINED.

       3.      *Modified RFA Thirty-three*: In its modified form, RFA Thirty-three had two subparts, (a) and (b). In subpart (a), CLF asked Pike to admit or deny that it was "aware of the potential for climate change factors at the Terminal to cause New Haven Harbor to become polluted." (Report at 4.) In subpart (b), it asked Pike to admit or deny that it was "aware of the potential for climate change factors at the Terminal to cause Long Island Sound to become polluted." (*Id.*) In both subparts, the term "climate change factors" was defined as above – that is, "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change." (*Id.*) But here, as with Modified RFA Twenty-eight, the term "*potential* for climate change factors" is undefined. There is also no reference point in time, instead asking Pike to admit that it "was aware." Without any anchor in time, and relying on vague, undefined terms, this RFA is too vague and imprecise to enforce.

Similarly, whereas Modified RFA Twenty-one asked Pike if, at the time that it conducted stormwater management, it considered certain possibilities, Modified RFA Thirty-three aimed at Pike's awareness of future possibilities. It is therefore untethered from the central purpose of narrowing facts for trial. Put differently, if Pike were to admit or deny it, it would be very unclear, exactly, what had been admitted or denied. Pike's vagueness objection is accordingly SUSTAINED.

   4. *Modified RFA Thirty-seven*. Modified RFA Thirty-seven asked Pike to "[a]dmit that climate change factors potentially cause pollution at the Terminal." (*Id.* at 4-5.) The RFA defined "climate change factors" as above, that is, as "projected changes in sea level rise, frequency and intensity of storms, precipitation, storm surge, flooding, tides, or groundwater levels associated with climate change." (*Id.*) Pike objects that Modified RFA Thirty-seven is unclear, vague, and overbroad, and that "it is not clear how it would aid in the resolution of this matter" for Pike to affirm or deny it. (Reports at 4-5.) This RFA suffers from the same infirmity as Modified RFAs Twenty-eight and Thirty-three, in that it is vague to the point that, if Pike did respond either affirmatively or negatively to it, nothing would become clarified for trial. Relatedly, the term "potentially," in this context, invites speculation and infuses the RFA with an impermissible level of ambiguity. Pike's objection to Modified RFA Thirty-seven is therefore SUSTAINED.

   5. *Modified RFA Fifty-four*. Like Modified RFA Thirty-three, CLF split Modified RFA Fifty-four into two subparts during the meet-and-confer process. In subpart (a), CLF asked Pike to admit that it was "aware of industry and/or governmental publications discussing the impacts of climate change factors on coastal communities." (Report at 5.) In subpart (b), it asked Pike to admit awareness of "industry and/or governmental publications discussing the impacts of climate change factors on coastal infrastructure." (*Id.*) The term "industry and/or governmental

18

publications" is too imprecise to enforce, however. And this request is not consistent with the purpose of requests for admission, because, again, it would not clarify any issue for trial irrespective of how Pike responded to it. Pike's objections to Modified RFA Fifty-four are SUSTAINED.

      6.    *Modified RFA Fifty-six*. Modified RFA Fifty-six is another one that CLF divided into two subparts during the meet-and-confer process. In subpart (a), CLF asked Pike to admit that it "could take steps to modify the Terminal to withstand the impacts of climate change." (Report, ECF No. 299, at 5.) In contrast to Modified RFA Twenty-one, this is precisely the sort of request that Judge Sullivan disallowed in the Rhode Island case, because it impermissibly "call[s] for irrelevant speculation" "regarding what is 'possible[.]'" *Conservation L. Found.*, 2025 WL 1530508, at *2. In subpart (b), Modified RFA Fifty-six asked Pike to admit knowing "that other coastal fuel storage facilities have been modified to withstand the impacts of climate change." (*Id.* at 6.) Here too, however, the RFA is too imprecise to enforce. Pike's objections to Modified RFA Fifty-six are SUSTAINED.

### III.   CONCLUSION AND ORDER

The Court has carefully considered all the arguments made in each of the parties' written submissions, and at oral argument, even if not specifically addressed in this Ruling and Order. For the foregoing reasons, the Plaintiff's Motion to Determine the Sufficiency of Defendant's Answers and Objections to Plaintiff's Requests for Admission (ECF No. 254) is granted in part and denied in part. It is granted with respect to Modified Requests for Admission One, Twelve, Twenty-one, Twenty-two, Twenty-seven, and Forty-nine. Pike is ordered to serve revised answers to these six Modified Requests for Admission on or before November 6, 2025. *See* D. Conn. L. Civ. R. 37(d) ("Unless a different time is set by the Court, compliance with discovery ordered by the Court shall

be made within fourteen (14) days of the filing of the Court's order."). The Motion is denied with respect to Modified Requests for Admission Four, Twenty-eight, Thirty-three, Thirty-seven, Fifty-four, and Fifty-six.

This ruling and order is a "determination of [a] nondispositive motion[ ] . . . relating to discovery." D. Conn. L. Civ. R. 72(C)(2). As such, it is reviewable pursuant to the clearly erroneous statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. It is an order of the Court unless reversed or modified by the District Judge in response to a timely objection under Local Rule 72.2(a).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge